**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

DIALECT, LLC,

     *Plaintiff,*

     v.

AMAZON.COM, INC., and
AMAZON WEB SERVICES, INC.,

     *Defendants*.

Civil Action No. 1:23-cv-581-DJN-LRV

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   OVERVIEW OF THE ASSERTED PATENTS AND TECHNOLOGY ............................. 3

III.  LEGAL PRINCIPLES ................................................................................................... 4

      A.   Claim Terms Are Normally Given Their Plain and Ordinary Meaning .................... 5

      B.   Definiteness ................................................................................................... 7

IV.   LEVEL OF ORDINARY SKILL IN THE ART ............................................................. 8

V.    CLAIM CONSTRUCTION ............................................................................................ 9

      A.   "context" ........................................................................................................ 9

      B.   "context stack" and "context entries" .................................................................. 11

      C.   "grammar" ...................................................................................................... 14

      D.   "domain agent" ............................................................................................... 17

      E.   "procedures sensitive to the determined context" .................................................. 20

      F.   "parser" terms ................................................................................................. 22

VI.   CONCLUSION ............................................................................................................. 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACTV, Inc. v. The Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)................................................................................10

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007)....................................................................................6

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
  466 F.3d 1000 (Fed. Cir. 2006)..............................................................................7, 8

*Allergan, Inc. v. Barr Labs., Inc.*,
  501 F. App'x 965 (Fed. Cir. 2013) ............................................................................7

*Am. GNC Corp. v. LG Elecs., Inc.*,
  No. 17-CV-01090-BAS-BLM, 2018 WL 400346 (S.D. Cal. Jan. 12, 2018) ..........21

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  No. 1:10-CV-910 (LMB) (JFA), 2018 WL 1699429 (E.D. Va. Apr. 6, 2018)........24

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014)...........................................................................22, 24

*BASF Corp. v. Johnson Matthey Inc.*,
  875 F.3d 1360 (Fed. Cir. 2017)................................................................................21

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013)..................................................................................7

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001)..................................................................................2

*Cipher Pharms. Inc. v. Actavis Lab'ys. FL, Inc.*,
  99 F. Supp. 3d 508 (D.N.J. 2015) ............................................................................21

*Collaborative Agreements, LLC v. Adobe Sys.*,
  No. 15-cv-03853-EMC, 2015 WL 7753293 (N.D. Cal. Dec. 2, 2015)....................24

*Daiichi Sankyo Co. v. Apotex, Inc.*,
  501 F.3d 1254 (Fed. Cir. 2007)..................................................................................8

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) ................................................................................24

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 13-cv-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015) ....................................25

*I/P Engine, Inc. v. AOL, Inc.*,
    874 F. Supp. 2d 510 (E.D. Va. 2012) ...............................................................................15, 16

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004).............................................................................................24

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) .......................................................4

*Masco Corp. v. United States*,
    303 F.3d 1316 (Fed. Cir. 2002)..............................................................................................22

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)...................................................................................................................8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)..................................................................................................................8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................... *passim*

*Profectus Tech. LLC v. Huawei Techs. Co.*,
    823 F.3d 1375 (Fed. Cir. 2016)................................................................................................5

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
    824 F.3d 999 (Fed. Cir. 2016)...................................................................................................5

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*,
    948 F.3d 1342 (Fed. Cir. 2020)..............................................................................................22

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013)................................................................................................6

*St. Isidore Rsch., LLC v. Comerica Inc.*,
    No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246 (E.D. Tex. Sept. 18, 2016).......................22

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
    329 F.3d 823 (Fed. Cir. 2003)...................................................................................................5

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
    806 F.3d 1356 (Fed. Cir. 2015)................................................................................................6

*SuperSpeed, LLC v. Google, Inc.*,
    No. H-12-1688, 2014 WL 129225 (S.D. Tex. Jan. 14, 2014)...............................................25

*Thorner v. Sony Comp. Ent. Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012)........................................................................................7

*Toro Co. v. White Consol. Indus. Inc.*,
 199 F.3d 1295 (Fed. Cir. 1999).........................................................................................7

*Toshiba Corp. v. Imation Corp.*,
 681 F.3d 1358 (Fed. Cir. 2012).....................................................................................6, 7

*Trs. of Columbia Univ. v. Symantec Corp.*,
 811 F.3d 1359 (Fed. Cir. 2016).....................................................................................4, 5

*VB Assets, LLC v. Amazon.com, Inc.*,
 C.A. No. 19-1410 (MN), Dkt. No. 90 (D. Del. June 23, 2021) ...................................... *passim*

*VirnetX, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014)..........................................................................................5

*White v. Dunbar*,
 119 U.S. 47 (1886)..............................................................................................................6

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015)........................................................................................22

*WSOU Invs. LLC v. Google LLC*,
 No. 2022-1063, 2023 WL 6889033 (Fed. Cir. Oct. 19, 2023)..............................23, 26, 27, 28

**Statute**

35 U.S.C. § 112 ................................................................................................... *passim*

## I.    INTRODUCTION

Dialect, LLC ("Dialect" or "Plaintiff") respectfully submits this opening claim construction brief. Plaintiff asserts six patents in this case:  U.S. Patent Nos. 7,693,720 (the "'720 Patent") (Exhibit 1); 8,015,006 (the "'006 Patent") (Exhibit 2); 8,140,327 (the "'327 Patent") (Exhibit 3); 8,195,468 (the "'468 Patent") (Exhibit 4); 9,263,039 (the "'039 Patent") (Exhibit 5); 9,495,957 (the "'957 Patent") (Exhibit 6) (collectively, the "Asserted Patents").

The novel inventions in the Asserted Patents were invented by VoiceBox Technologies ("VoiceBox") and relate to groundbreaking improvements to voice recognition and natural language understanding ("NLU"). VoiceBox was a key pioneer in the fields of voice recognition technology and NLU. These technologies power a wide variety of consumer electronics and provide key functionality for smart phones, tablets, TVs, and Internet of Things devices. VoiceBox spent more than a decade developing and building key early NLU inventions, producing one of the most valuable portfolios of technology as recognized by the Institute of Electrical and Electronics Engineers ("IEEE"), including the Asserted Patents. The Asserted Patents are the result of VoiceBox's substantial investment and research and were fundamental to the development of voice commerce technology.

Defendants Amazon propose to construe ten claim terms from five of the six Asserted Patents.[1] All those terms can be easily understood by a person of ordinary skill in the art, but Defendants ask the Court to interpret them in a way that would distort their ordinary meaning and ignore the clear and express understanding of what VoiceBox invented and claimed. No genuine dispute should exist as to the proper interpretation of any of the claim terms at issue, which simply describe how VoiceBox's NLU technology works. The terms "context," "context stack," and

---

[1] The parties do not currently dispute the construction of any claim term of the '327 Patent.

1

"context entry" refer to the inventions' considerations of context for user input. The term "grammar" refers to principles that govern acceptable user input or request. The term "domain agent" refers to software with domain-specific behavior and information. The term "parser" refers to software that analyzes a string of words. Indeed, the court in the *VB Assets* case analyzed patents invented by VoiceBox covering similar technology, and specifically found that the term "context" does not require construction. *VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 19-1410 (MN), Dkt. No. 90 (D. Del. June 23, 2021) (Exhibit 7), at 2, 9. Defendants also agreed to a construction of "domain agent" in the *VB Assets* case (*see id.* at 1) that they now repudiate, but that this Court should adopt.

The claim language of the Asserted Patents is easily understood and generally requires no special definitions or application of 35 U.S.C. § 112, ¶ 6 by the Court. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech.* Co., 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). A term that is clear and readily comprehensible in its original form needs no further elucidation or special definitions. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (observing that the proper construction of a term may at times be apparent even to laypersons); *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that claims at issue did "not require elaborate interpretation"); *O2 Micro*, 521 F.3d at 1362 ("We, however, recognize that district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."). Only when the parties present a fundamental dispute regarding the scope of a claim term, is it the court's duty to resolve it. *Id*. That is not the case here. The plain express language of the patent claims and specification, as well as the file histories establish that the claim terms identified by Defendants should all be construed in a manner consistent with their plain and ordinary meaning.

## II.    OVERVIEW OF THE ASSERTED PATENTS AND TECHNOLOGY

The Asserted Patents attempt to solve problems with conventional systems in understanding natural language. "Conventional computer interfaces use some combination of keyboards, keypads, point and click techniques and touch screen displays." '468 Patent, 1:29-31. Natural speech interfaces provide advantages over conventional computer interfaces, particularly in mobile environments. *E.g.*, '468 Patent, 1:28-45. However, there are many challenges for a computer to understand human speech. For example, understanding "a question or … command[] typically relies heavily on context and domain knowledge of the target person." *Id*. at 1:50-52. "[M]ost natural language [requests] and commands are incomplete in their definition". *Id*. at 2:13-15. "[S]ome questions can only be interpreted in the context of previous questions, knowledge of the domain, or the user's history of interests and preferences." *Id*. at 2:9-12. "[M]any natural language questions may be ambiguous or subjective." *Id*. at 2:15-16. In addition, to understand human speech utterances, "[s]everal requests may need to be initiated and…concatenated to achieve a complete result." *Id.* at 2:23-25.

The '006, '720, '957, '468, and '039 Patents solved the problems with understanding natural language requests and commands by using additional sources of information, including "context, prior information, domain knowledge, and user specific profile data". *E.g.*, '468 Patent, 2:58-60. For example, the '957 Patent utilizes a context stack comprising context information that corresponds to prior utterances. *E.g.*, '957 Patent, Cl. 1. The '468 Patent considers prior interactions with the user, prior interactions with a plurality of users, and the environment of the user and the mobile device. *E.g.*, '468 Patent, Cl. 1. The claimed invention also uses domain agents to extend the functionality of the invention to new domains. *E.g.,* '720 Patent, 21:43-45. For example, domain agents "may provide complete, convenient and redistributable packages or

3

modules for each application area." *Id*. at 21:41-43. "[T]he domain agents may [also] include "data that is needed to extend or modify the functionality of the system[] in a current or new domain." *Id*. at 14:45-47. The data of the domain agents can be updated in a flexible manner. *Id.* at 14:47-62. In other words, the use of domain agents enables the claimed system to be scalable while still accurately determining user intent. *See, e.g.*, '468 Patent, 27:13-39.

In addition, the '468 and '039 Patents also enable "multi-modal" user interactions, which comprise of receiving and responding to natural language utterance and non-speech input from users. *E.g.*, '468 Patent, Cl. 19. The claimed invention merges transcription of speech utterances and transcription non-speech input, and uses context that matches the merged transcription. *Id*. The use of multi-modal user interactions enriches the contextual information utilized by the system. For example, "the user may be presented with textual search results corresponding to a name of a famous person and the user may provide a speech command to find a biography of the famous person." *Id.* at 21:53-56.

## III.    LEGAL PRINCIPLES

Claim construction is an issue of law for courts to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). In construing patent claims, courts should start with the language of the claims themselves, giving terms "their ordinary and customary meaning[,]" which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Phillips*, 415 F.3d at 1312-13 (en banc). Claims "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979. "The specification is *always* highly relevant to the claim construction analysis and is, in fact the single best guide to the meaning of a disputed term." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) (citing *Phillips*, 415

F.3d at 1320) (internal quotation marks omitted). Courts "should also consider the patent's prosecution history" in construing claim terms. *Phillips*, 415 F.3d at 1317 (internal citations omitted). The claim language, specification, and prosecution history constitute the intrinsic evidence.

Courts may also consider "extrinsic evidence," including expert testimony, dictionaries, and learned treatises, to better understand the technical field and understand what a person of skill in the art would understand claim terms to mean. *Id.* However, "such evidence is generally of less significance than the intrinsic record," *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014) (citing *Phillips*, 415 F.3d at 1317). And "[e]xtrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) (quoting *Phillips*, 415 F.3d at 1324). It is legal error for a court to "rel[y] on extrinsic evidence that contradicts the intrinsic record." *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1003 (Fed. Cir. 2016); *see also Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 832 (Fed. Cir. 2003) ("Resort to extrinsic evidence is appropriate only when an ambiguity remains after consulting the intrinsic evidence of record."). Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Profectus*, 823 F.3d at 1380-81 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)); *see also Columbia Univ.*, 811 F.3d at 1363 ("The only meaning that matters in claim construction is the meaning in the context of the patent.").

### A.      Claim Terms Are Normally Given Their Plain and Ordinary Meaning

A patent's claims define the scope of the invention. *Phillips*, 415 F.3d at 1312 ("[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.")

(internal citation omitted). As such, "the words of a claim are generally given their ordinary and customary meaning." *Id.* (cleaned up); *see also White v. Dunbar*, 119 U.S. 47, 52 (1886) ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public . . . to construe it in a manner different from the plain import of its terms.").

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* "*The task of comprehending [claim terms] is not always a difficult one*." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) (emphasis added). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) ("When claim language has as plain a meaning on an issue . . ., leaving no genuine uncertainties on interpretive questions relevant to the case, it is particularly difficult to conclude that the specification reasonably supports a different meaning [not consistent with the claim language as written].").

However, in two circumstances the meaning of a claim term may deviate from the plain and ordinary meaning. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012). First, a patentee may define the meaning of terms by acting as their own lexicographer such that this special definition overrides any ordinary and customary meaning. *SkinMedica, Inc. v.*

*Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013). "To act as its own lexicographer, a patentee must ***clearly*** set forth a definition of the disputed claim term other than its plain and ordinary meaning" and "***clearly*** express an intent to redefine the term." *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (emphases added) (cleaned up). Whether a term has been provided a special definition by the patentee is determined by reviewing the entirety of the specification, including the words of the specification and the figures, and claims as understood by a person of skill in the art. *See Allergan, Inc. v. Barr Labs., Inc.*, 501 F. App'x 965, 969-70 (Fed. Cir. 2013); *Toro Co. v. White Consol. Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (claim terms are not construed in a "lexicographic vacuum, but in the context of the specification and drawings").

The other way to override the plain and ordinary meaning of a claim term is when there has been a prosecution disclaimer, whereby an applicant for a patent may disclaim or disavow claim scope during prosecution. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). Disavowal requires "*a clear and unmistakable disclaimer*." *Thorner*, 669 F.3d at 1366-67 (emphasis added). Absent a patentee acting as a lexicographer, or the existence of a prosecution disclaimer, the plain and ordinary meaning of a claim term as understood by a person of skill in the art ("POSITA") at the time of the patent controls. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

### B.    Definiteness

Under 35 U.S.C. § 112(b), "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." Whether a claim "is sufficiently definite … is a legal conclusion" made by the Court. *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000,

7

1015 (Fed. Cir. 2006). Patent claims are presumed to be valid and definite, and the accused infringer therefore bears the burden to prove that a claim is indefinite by clear and convincing evidence. *See id.*; *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

The Supreme Court has explained that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonably certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). A patent claim is not indefinite, however, simply because there is "[s]ome modicum of uncertainty" as to its bounds— such uncertainty is tolerated as "the price of ensuring the appropriate incentives for innovation." *Id.* at 909 (citation omitted). Moreover, it is critical to "bear in mind … that patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art." *Id.* (cleaned up). Thus, "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* at 910 (citation omitted).

## IV.    LEVEL OF ORDINARY SKILL IN THE ART

Claims are construed from the viewpoint of "a person of ordinary skill in the art". *Phillips*, 415 F.3d at 1313; *see also Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Plaintiff proposes the following level of ordinary skill in the art: at least a bachelor-level degree in computer science, computer engineering, electrical engineering, engineering, or a related field, and two years of experience with speech recognition, natural language processing, engineering, and/or equivalent education, research experience, or knowledge. Defendants have not set forth their definition of level of ordinary skill in the art.

## V.    CLAIM CONSTRUCTION

### A.    "context"

| Claim Term | Patents/Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "context" | '720 patent, claims 1, 31. '006 patent, claims 1, 2, 3, 5, 10. '468 patent, claims 19, 28. '039 patent, claims 17, 18. '957 patent, claims 1, 7. | Plain and Ordinary Meaning | a domain or application area that defines a set of questions that can be activated during a conversation |

The term "context" has a plain and ordinary meaning that is easily understood by a person of ordinary skill in the art. The term "context" needs no construction and its identification for briefing here reflects a degree of scrutiny that would only be applied by an attorney and not an ordinary artisan familiar with the term. Defendants propose that "context" be construed as "a domain or application area that defines a set of questions that can be activated during a conversation." Defendants' construction ascribes a special meaning to the term "context," which construction lacks intrinsic support and should be rejected. The *VB Assets* court in the *VB Assets* case analyzed patents invented by VoiceBox covering similar technology, and specifically and found that the term "context" does not require construction. *VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 19-1410 (MN), Dkt. No. 90 (D. Del. June 23, 2021), at 2, 9. Specifically, the *VB Assets* court also rejected Amazon's proposal in that case because it unduly limits "context" to "domain", *id.* at 9., and Amazon's proposal in this case suffers from the same defect and should be rejected for the same reason.

The patent claims support a plain and ordinary meaning of "context" and do not support Defendants' construction. The claims of the Asserted Patents consistently describe determining a context for user input, and using the context to understand user input and to determine the right

domain agent to process and respond to the input. For example, claim 1 of the '720 Patent recites "[a] mobile system responsive to a user generated natural language speech utterance," where the system can "determin[e] a context for the natural language speech utterance" and "select at least one of the plurality of domain agents based on the determined context[.]" *See also, e.g.*, '720 Patent, Cl. 31 (similar); '006 Patent, Cl. 1 (similar); '468 Patent, Cl. 19 (similar); '957 Patent, Cl. 1 (similar). The claims do not describe context as defining "a set of questions that can be activated during a conversation" and do not support Defendants' construction. In fact, those terms do not appear in the claims at all. *ACTV, Inc. v. The Walt Disney Co.,* 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").

The patent specifications are consistent with the patent claims, and both support that a plain and ordinary meaning should be given to the term "context." For example, the '720 Patent discloses that "… a person asking a question or giving a command typically relies heavily on *context* and the domain knowledge of the person answering[,]" '720 Patent, 1:46-49 (emphasis added), and "some questions can only be interpreted *in the context of previous questions*…." *Id*. at 2:3-5 (emphasis added). The invention "makes significant use of *context*, prior information, domain knowledge, and user specific profile data to achieve a natural environment for one or more users making queries or commands in multiple domains." *Id*. at 2:54-57 (emphasis added). The invention also uses "a real-time scoring system or other techniques" to determine the most likely context, and then invoke the correct agent based on the determination. *Id*. at 7:45-46.

Other portions of the specifications give specific examples of "context." For example, the '720 Patent discloses "us[ing] the location of the particular device addressed by the user as part of the *context* for the questions asked.". '720 Patent, 4:1-4. The '957 Patent describes "context such

10

as time, location, numbers, dates, categories (e.g., music, movies, television, addresses, etc.)...." '957 Patent, 20:58-60. The '957 Patent also discloses that "the user may be presented with textual search results corresponding to a name of a famous person[,]" and that "[t]he system may maintain the *context* of the textual search results to find the biography associated with the famous person." *Id.* at 22:22-27 (emphasis added). As another example, "a question with the keyword[] 'temperature' implies a context value of weather for the question[,]" but "[w]ithin a different dialog, the [same] keyword … can imply a context for a measurement." *Id.* at 34:64-35:1. The specification disclosure does not define "context" as "defining a set of questions that can be activated during a conversation."

Given the disclosure in the claims and the specification, a person of skill in the art would understand the plain and ordinary meaning of "context." Defendants' construction is not supported by intrinsic evidence and should be rejected.

## B. "context stack" and "context entries"

| Claim Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "context stack" | '006 patent, claim 2. '468 patent, claims 19, 28. '957 patent, claims 1, 3, 4, 7. '039 patent, claim 17. | Plain and Ordinary Meaning, or in the alternative a data structure that stores or references contexts | an ordered list of elements, each element storing or referencing a context |
| "context entries" / "entries in a context stack" | '957 patent, claims 1, 3, 4, 5, 7. '468 patent, claim 19 | Plain and Ordinary Meaning, or in the alternative, contexts or references to contexts | elements of an ordered list, each element storing or referencing the context associated with a prior utterance / elements of an ordered list, each element storing or referencing a context |

The terms "context stack," "context entries," and "entries in a context stack" should be

11

given their plain and ordinary meaning, which is easily understood by a person of ordinary skill in the art. In the alternative, "context stack" should be construed as "a data structure that stores or references contexts," and "context entries" and "entries in a context stack" should be construed as "contexts or references to contexts." Defendants' constructions seek to import an "ordered list" limitation to both terms that is not supported by intrinsic evidence.

The claim language supports Plaintiff's constructions. For example, claim 2 of the '006 Patent recites "a *context stack* that includes one or more recent contexts." '006 Patent, Cl. 2 (emphasis added). The context stack can be updated in processing a new user request, and the context for a follow-up request can be determined using the updated context stack. *E.g.*, '468 Patent, Cl. 27, 28; *see also Id.,* Cl. 9 (similar); '039 Patent, Cl. 17 (similar). In other words, a context stack includes one or more contexts for user input, and a context may include a variety of data associated with user input (e.g., location, dialog history, time, date), *see* Section IV.A *supra*. Therefore, a "context stack" simply means a data structure that stores or references contexts.

The claims' description of a "context entry" is consistent. For example, claim 1 of the '957 Patent recites "generat[ing] *a context stack comprising context information that corresponds to a plurality of prior utterances*, wherein *the context stack includes a plurality of context entries*[.]" '957 Patent, Cl. 1 (emphasis added). The context entries in the context stack are scored based on comparison with words in the current user utterance, one or more context entries from the context stack are identified based on their scores, and the context information of the current user utterance is determined based on those identified context entries. *Id*.; *see also, e.g.*, '468 Patent, Cl. 19 (similar). In other words, a context entry is simply an entry in a context stack, and the entry is a context or a reference to context.

The claims do not limit "context stack" to any specific type of data structure or "an *ordered*

12

list" of contexts as proposed by Defendants. The term "list" does not appear in the claims. The only claims where the term "order" appears in connection with "context stack" are claims 3 and 4 of the '957 Patent. Claim 3 recites that "the plurality of context entries are ordered in the context stack," and that the ordering is updated "based on the one or more rank scores[.]" '957 Patent, Cl. 3. Claim 4 further specifies that "identify, based on the updated ordering of the plurality of context entries in the context stack, one or more other context entries that correspond to the determined one or more words of the subsequent natural language utterance[.]" *Id.* at Cl. 4. The recitation of "ordering" of "context entries" in a "context stack" in dependent claims shows that the "context stack" in the independent claims are not necessarily ordered. *See Phillips*, 415 F.3d at 1315 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim"). Defendants' narrowing construction of "context stack" and "context entry" should be rejected.

The specification disclosure is consistent with the claims, and it also supports Plaintiff's construction. The invention scores each context in the context stack to determine a most likely context. *E.g.*, '957 Patent, 20:54-57; *see also id.* at 37:8-15. "The context of a question or command may determine the domain and, thereby, the domain agent[], if any, to be invoked." *Id.* at 34:62-64. A context stack may be updated to enable follow-up requests. *E.g.*, *id.* at 4:54-55. The specification does not limit "context stack" to any specific data structure or "an *ordered* list" of contexts as proposed by Defendants, nor does it provide a meaning of "context entry" that departs from its meaning as can be easily understood in the claims.

Given the disclosure in the claims and the specification, a person of skill in the art would understand the plain and ordinary meanings of "context stack" and "context entry" as proposed by Plaintiff. Defendants' constructions are not supported by intrinsic evidence and should be rejected.

13

C.      "grammar"

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "grammar" | '720 patent, claims 1, 31;<br><br>'006 patent, claims 1, 5, 10;<br><br>'039 patent, claim 13 | Plain and Ordinary Meaning, or in the alternative a set of principles that govern an acceptable input or request | a formal specification of the permissible structures for a language |

The term "grammar" in the asserted patent claims should be given its plain, ordinary, and customary meaning.  Grammar, as it is used the claims of the '720, '006, and '039 patents, is one of those terms for which the "ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," *Phillips*, 415 F.3d at 1314, and no construction is necessary here. The claims of these patents consistently link a "grammar" with an acceptable input or request to a domain agent. For instance, the term "grammar" in Claim 31 of the '720 Patent can be readily understood as referring to how the parser transforms words or phrases into a format that the domain agent can use:

> transforming, at the parser connected to the computer device on the vehicle, the recognized words or phrases into at least one of a question or a command, wherein the at least one question or command is formulated in a ***grammar*** that the selected domain agent uses to process the formulated question or command[.]

'720 Patent, 35:45-50 (emphasis added). Claim 5 of the '006 Patent explains how to rewrite a user's request into a format that is usable by a domain agent:

> formulating, at the parser, the request contained in the utterance in accordance with a ***grammar*** used by a domain agent associated with the determined context, wherein formulating the request in accordance with the ***grammar*** used by the domain agent includes:
>
>> determining one or more required values and one or more optional values associated with formulating the request in the ***grammar*** used by the domain agent;
>>
>> extracting one or more criteria and one or more parameters from one or more keywords

14

contained in the one or more recognized words or phrases, wherein the parser extracts the one or more criteria and the one or more parameters using procedures sensitive to the determined context;

inferring one or more further criteria and one or more further parameters associated with the request using a dynamic set of prior probabilities or fuzzy possibilities; and

transforming the one or more extracted criteria, the one or more extracted parameters, the one or more inferred criteria, and the one or more inferred parameters into one or more tokens having a format compatible with the ***grammar*** used by the domain agent, wherein the one or more tokens include all the required values and one or more of the optional values associated with formulating the request in the ***grammar*** used by the domain agent[.]

'006 Patent, 27:30-56 (emphases added). Claim 13 of the '039 Patent similarly recites a "context description grammar" that is associated with a plurality of domain agents and that is used to generate a relevance score (which helps select the correct domain agents to process the request and helps order the domain agents' responses):

comparing the text combinations to entries in a context description ***grammar***;

accessing a plurality of domain agents that are associated with the context description ***grammar***;

generating a relevance score based on results from comparing the text combinations to entries in the context description ***grammar***;

selecting one or more domain agents based on results from the relevance score;

obtaining content that is gathered by the selected domain agents; and

generating a response from the content, wherein the content is arranged in a selected order based on results from the relevance score.

'039 patent, 30:48-61 (emphases added).

Thus, because "the Court need not provide a new definition or rewrite a term when the Court finds the term's plain and ordinary meaning is sufficient[,]" the Court should decline to construe "grammar" and should rule that it has its plain and ordinary meaning. *I/P Engine, Inc. v. AOL, Inc.*, 874 F. Supp. 2d 510, 516 (E.D. Va. 2012); *see also id.* at 519 (ruling that disputed claim term "is clear and apparent from the claim language itself" and "no construction of this claim term

15

beyond its current text is necessary").

If the Court is nevertheless inclined to construe "grammar," the Court should look primarily to the claims as well as to the remainder of the VoiceBox patents' specification and, if necessary, their prosecution history. *See Phillips*, 415 F.3d at 1314-19; *I/P Engine*, 874 F. Supp. 2d at 516. Consistent with the claims of the Asserted Patents as shown above, the remainder of the intrinsic record reveals that a "grammar" is "a set of principles that govern an acceptable input or request." For example, the '720 specification states:

- "To formulate a question or command in the regular ***grammar*** used by agents, the parser will preferably determine required and optional values for the criteria or parameters. These criteria may have been explicitly supplied by the user or may need to be inferred."

- "Once the context and the criteria are determined, the parser 118 may form the question or command in a standard format or hierarchical data structure used for processing by the agents 150, 156. The parser 118 may fill in all required and some optional tokens for the ***grammar*** of the context. Often the tokens must be transformed to values and forms acceptable to the agents."

'720 Patent, 28:27-31, 28:63-29:2 (emphasis added). The '006 specification contains similar disclosures. *See* '006 Patent, 18:14-18, 18:50-56. The '039 specification likewise explains, for example:

- "According to yet another alternative embodiment of the invention, context information may be determined from a command or request …. The command or request may be compared against a context description ***grammar*** to identify a match. Any active grammars in the context description grammar may be scored against the command or request and a best match may be sent to a response generator module."

'039 Patent, 3:17-27 (emphasis added). *See also id.* at 12:37-57, 13:46-14:9.

Defendants' proposed interpretation should be rejected. Amazon's interpretation adds requirements, such as for example a "formal specification" and a "language," which are extraneous to the Asserted Patents and which would confuse the jury.

Accordingly, the Court should decline to construe "grammar" and should give it its plain

and ordinary meaning. Alternatively, if the Court adopts a construction, the Court should construe "grammar" to mean "a set of principles that govern an acceptable input or request."

**D.    "domain agent"**

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "domain agent" | '720 patent, claims 1, 31; '006 patent, claims 1, 2, 5, 10; '468 patent, claims 19, 30, 32; '039 patent, claims 13, 14. | software with domain-specific behavior and information | a software package or module that receives, processes and responds to user questions, queries and commands in a specific domain |

In previous litigation over related U.S. Patent No. 8,886,536, Amazon agreed that a "domain agent" is "software with domain-specific behavior and information." *VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 19-1410 (MN), Dkt. No. 90 (D. Del. June 23, 2021) (Exhibit 7) at 1. The '536 patent (Exhibit 8) shares two inventors with the patents-in-suit in this case. It relates to targeting and tracking advertisements in systems and methods similar to those described and claimed in the Asserted Patents. The definition of "domain agent" for the '536 patent is consistent with the claims and specification of the Asserted Patents, which consistently describe domain agents as components of an extensible architecture that allows for the creation of agents to address problems particular to a domain using information appropriate for that domain.

"'[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "To begin with, the context in which a term is used in the asserted claim can be highly instructive." *Id.* Plaintiff's interpretation, which Amazon agreed to in the *VB Assets* litigation, is entirely consistent with the way "domain agent" is used in the asserted claims. Claim 19 of the '468 Patent, for example, recites:

19. A method for processing multi-modal natural language inputs, comprising:

17

> determining a most likely context for the multi-modal input based on the identified entries;
>
> identifying a ***domain agent*** associated with the most likely context for the multi-modal input;
>
> communicating a request to the identified ***domain agent***; and
>
> generating a response to the user from content provided by the identified ***domain agent*** as a result of processing the request.

'468 Patent, Cl. 19. *See also* '720 Patent, Cl. 1, 31; '006 Patent, Cl. 1, 2, 5, 10; '468 Patent, Cl. 30, 32; '039 Patent, Cl. 13, 14. "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314. The interpretation is also consistent with the use of the term in the unasserted claims. *See* '720 Patent, Cl. 3, 5, 6, 13, 26, 28, 34; '006 Patent, Cl. 4, 6, 8, 9; '468 Patent, Cl. 1, 9, 12, 14, 15, 27; '039 Patent, Cl. 1, 2, 9-11, 14, 19.  In each instance the domain agent supplies domain-specific behavior and information.

The previously agreed interpretation is also consistent with the Asserted Patents' specifications. The specification of the '720 Patent, for example, states:

> According to some aspects of the invention, domain specific behavior and information are organized into agents. Agents are executables that receive, process and respond to user questions, queries and commands. The agents provide convenient and re-distributable packages or modules of functionality, typically for a specific domain. Agents can be packages of executable code, scripts, links to information, data, and other data forms, required to provide a specific/package of functionality, usually in a specific domain. In other words, an agent may include everything that is needed to extend the functionality of the invention to a new domain. Further, agents and their associated data can be updated remotely over a network as new behavior is added or new information becomes available. Agents can use system resources and the services of other, typically more specialized, agents. Agents can be distributed and redistributed in a number of ways including on removable storage media, transfer over networks or attached to emails and other messages. An update man[a]ger is used to add new agents to the system or update existing agents.

'720 Patent, 4:5-24; *see also* '006 Patent, 2:54-3:7 (similar); '468 Patent, 27:13-39 (similar); '039 Patent, 14:38-62 (similar).

The specifications go on to differentiate between general-purpose system agents and domain agents. In contrast to general-purpose system agents addressing "general-purpose behaviors and data, which provide core or foundation services for more specialized domain or system agents", '720 Patent, 4:27-29, the domain agents described and claimed by the Asserted Patents help "extend the functionality of the invention to a new domain." *E.g.*, '720 Patent, 4:14-15. The '720 Patent, for example, discloses domain agents directed to query and response domains such as "driving directions, travel services, entertainment scheduling, and other information," while other domain agents directed to control domains may perform "control of specific devices on a vehicle[,]" such as control of windshield wipers, headlights, or music. *See* '720 Patent, 4:37-64. Similarly, the '039 patent discloses a "block diagram of an agent architecture according to an embodiment of the invention is shown in FIG. 2." '039 Patent, 14:60-62. That figure, shown at right, portrays domain agents, system agents, and an agent manager connected to an event manager, as well as an agent library. "New commands, keywords,



Figure 2

information, or information sources can be added to any domain agent 156 by changing agent data or scripting. These configuration capabilities may allow users and content developers to extend and modify the behavior of existing domain agents 156 or to create new domain agents 156 from a generic agent without the need to create new compiled code." '039 Patent, 16:41-47.

19

Defendants' interpretation of "domain agent" is inconsistent with the claimed inventions and should be rejected.  Amazon's inclusion of "receive, process, and respond" is redundant of the claim language, which recites what the domain agents do, and the inclusion of this language will confuse the jury. Amazon also appears to pick and choose from embodiments described in the specification to add limitations that are extraneous to the claimed inventions. The specifications say, for example, that agents "*may provide* complete, convenient and re-distributable packages or modules for each application area[,]" not that they *are* packages or modules as Amazon contends. *E.g.*, '720 Patent, 21:41-43 (emphasis added); *see also id.* at 4:8-10; '006 Patent, 2:60-63, 11:32-34; '468 Patent, 27:18-20; '039 Patent, 14:43-44.  "More specialized domain agents can use the functionality of more generalized domain agents," '720 Patent, 4:38-40, and thus the specifications explain domain agents can be *generalized*, instead of being limited to a "specific" domain as Amazon would have it. *See also*, *e.g.*, '720 Patent, 4:18-19 ("Agents can use system resources and the [functionality] of other, typically more specialized, agents."), 21:49-50; '006 Patent, 3:1-2, 11:39-41; '468 Patent, 27:66-28:2; '039 Patent, 15:23-26.

For the foregoing reasons, the Court should construe "domain agent" to mean "software with domain-specific behavior and information."

### E.    "procedures sensitive to the determined context"

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "procedures sensitive to the determined context" | '006 patent, claim 5. | Plain and Ordinary Meaning, or in the alternative procedures that consider the determined context | Indefinite under 35 U.S.C. § 112. |

Rather than propose a specific construction, Amazon in effect requests that the Court issue an early summary judgment ruling that the term "procedures sensitive to the determined context" is indefinite and the claim is invalid.  While some courts consider indefiniteness challenges during

claim construction, courts routinely defer a decision until at least summary judgment. *See e.g. Cipher Pharms. Inc. v. Actavis Lab'ys. FL, Inc.,* 99 F. Supp. 3d 508, 512-14 (D.N.J. 2015) (refusing to rule on claim construction whether two claim terms were indefinite because they could be construed and noting that the indefiniteness decision would be better left until there is a more developed record); *Am. GNC Corp. v. LG Elecs., Inc.*, No. 17-CV-01090-BAS-BLM, 2018 WL 400346, at *10 (S.D. Cal. Jan. 12, 2018). This is especially appropriate here given the case schedule. The deadline for dispositive motion is July 3, 2024, only 3.5 months from now.  Dkt. No. 147 § 8(a), p. 9.  At that point, the parties will have completed expert discovery and will have had the opportunity to depose their respective witnesses on their positions. For efficiency, the Court should postpone decision on this indefiniteness challenge.

Even if this issue is considered, Amazon cannot meet its burden.  As with all validity challenges, Amazon must prove indefiniteness "by clear and convincing evidence." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).  Claim 5 requires "parsing . . . information relating to the utterance to determine . . . a context associated with the request contained in the utterance". '006 Patent, Cl. 5.  It is this "determined" context that is then referenced in the claim where the parser uses "procedures sensitive to the determined context." This is not a term that is difficult to understand, nor does it require any construction.  Indeed, the specification goes into further detail when discussing "context sensitive procedures" in the description of some of the preferred embodiments.  *See e.g.* '006 Patent, 18:19-22 ("The criteria handlers 152 provide context sensitive procedures for extracting the criteria or parameters from the user's question or command.").  Given this detail, a person of ordinary skill in the art would be able to understand the scope of the claims.

For the foregoing reasons, the Court should construe "procedures sensitive to the

determined context" to have its plain and ordinary meaning or in the alternative "procedures that consider the determined context."

F.    "parser" terms

Defendants seek to have four separate terms involving a "parser" or "parsing" be construed as subject to 35 U.S.C. § 112 ¶ 6 and found indefinite due to an alleged lack of structure in the specification. Because these four terms recite sufficient structure, Amazon cannot meet its burden to show that § 112 ¶ 6 applies.

A patentee has the option of expressing a claim using functional language. *See* 35 U.S.C. § 112 ¶ 6, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-49 (Fed. Cir. 2015). In particular, § 112, ¶ 6 provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). The presumption is that terms reciting "means" are subject to § 112 ¶ 6. *Williamson*, 792 F.3d at 1348. Conversely, if the term does not use the word "means," then it is presumed not to be subject to § 112 ¶ 6. *Id.* "That presumption can be overcome, but only if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1353-54 (Fed. Cir. 2020) (cleaned up) (citing *Williamson*, 792 F.3d at 1349). Further, § 112, ¶ 6 does not apply when the claim itself describes an algorithm. *St. Isidore Rsch., LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246, at *13 (E.D. Tex. Sept. 18, 2016). "The correct inquiry, when 'means' is absent from a limitation, is whether the limitation, read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, has sufficiently definite structure to a person of ordinary skill in the art." *Apple Inc. v. Motorola, Inc.*,

22

757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds by Williamson*, 792 F.3d at 1349. Each of the terms here are similar and contain more than enough structure such that the presumption against the application of § 112 ¶ 6 (due to the lack of the term "means for") cannot be overcome.

| Term |
| --- |
| "a parser that interprets the recognized words or phrases, wherein the parser uses at least the data received from the plurality of domain agents to interpret the recognized words or phrases, wherein the parser interprets the recognized words or phrases by: determining a context for the natural language speech utterance; selecting at least one of the plurality of domain agents based on the determined context; and transforming the recognized words or phrases into at least one of a question or a command, wherein the at least one question or command is formulated in a grammar that the selected domain agent uses to process the formulated question or command"<br><br>'720 patent, Cl. 1 |

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| Not subject to 35 U.S.C. § 112 ¶ 6,<br><br>The term "parser" should be accorded a plain and ordinary meaning or in the alternative, software that analyzes a string of words. | Subject to 35 U.S.C. § 112, para. 6.<br>Functions: interpret the recognized words or phrases using at least the data received from the plurality of [domain agents]*, by: determining a [context]* for the natural language speech utterance; selecting at least one of the plurality of [domain agents]* based on the determined [context]*; and transforming the recognized words or phrases into at least one of a question or a command, wherein the at least one question or command is formulated in a [grammar]* that the selected [domain agent]* uses to process the formulated question or command *"context," "domain agent," and "grammar" as construed in Term Nos. 1, 4, and 5<br><br>Structure: Indefinite |

Here, the term "parser" alone connotes sufficiently definite structure, because "parser" indicates the objective and function of the software to analyze words. "[U]nlike in the mechanical arts, the specific structure of software code and applications is partly defined by its function," and courts "can look…to the functional language to see if a person of ordinary skill would have understood the claim limitation as a whole to connote sufficiently definite structure." *WSOU Invs.*

23

*LLC v. Google LLC,* No. 2022-1063, 2023 WL 6889033, at *5 (Fed. Cir. Oct. 19, 2023) (internal quotation omitted). "Parser" is not a nonce word that is used as a substitute for the word "means." *See, e.g. Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1370 (Fed. Cir. 2022) (holding that the term "system" was not a nonce term used as a substitute for the word "means" in the context of the claims).

Further, the parser is defined in the longer term as a software that interprets "the recognized words or phrases" by following a set of steps including: (1) "determining a context . . .", (2) "selecting" a "domain agent[]", and "transforming the recognized words . . . into . . . "a question or command." In other words, the claim language provides sufficient description of how a "parser" operates. Courts have routinely found that even terms as generic as "computer code" or a "circuit" are not subject to 112 ¶ 6 when the claim recites sufficient operations and objectives. *See*, *e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-CV-910 (LMB) (JFA), 2018 WL 1699429, at *17 (E.D. Va. Apr. 6, 2018) (holding that "computer code for" connotes sufficient structure where the claim described how the computer code operates, including its objectives and desired outputs); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" has sufficiently definite structure because the claim recited the "objectives [and] operations" of the circuit); *Apple*, 757 F.3d at 1295, 1298-99, 1301 (Fed. Cir. 2014) (noting that structure for software "is understood through, for example, an outline of an algorithm, a flowchart, or a specific set of instructions or rules" and finding that "heuristic [for performing a function]" has sufficiently definite structure because the patent described the operation and objectives of the heuristic); *Collaborative Agreements, LLC v. Adobe Sys.*, No. 15-cv-03853-EMC, 2015 WL 7753293, at *4-6 (N.D. Cal. Dec. 2, 2015) (finding that "code segment [for performing a function]" has sufficiently definite structure because the claim

24

described the operation of the code segment); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 7770208, at *11 (N.D. Cal. Dec. 3, 2015) (finding that "processor [for performing a function]" has sufficiently definite structure because the claim described how the processor functions with the other claim components); *SuperSpeed, LLC v. Google, Inc.*, No. H-12-1688, 2014 WL 129225, at *23 (S.D. Tex. Jan. 14, 2014) (finding that "code [for performing a function]" has sufficiently definite structure because the claim described the operation of the code within the invention). As in those cases, the Court should find that the "parser" term here is not subject to 112 ¶ 6.

| Term |
|---|
| "determining, at a parser connected to the computer device on the vehicle, a context for the natural language speech utterance; selecting, at the parser connected to the computer device on the vehicle, at least one of the plurality of domain agents based on the determined context; transforming, at the parser connected to the computer device on the vehicle, the recognized words or phrases into at least one of a question or a command, wherein the at least one question or command is formulated in a grammar that the selected domain agent uses to process the formulated question or command"<br><br>'720 patent, Cl. 35 |

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Not subject to 35 U.S.C. § 112 ¶ 6,<br><br>The term "parser" should be accorded a plain and ordinary meaning or in the alternative, software that analyzes a string of words. | Subject to 35 U.S.C. § 112 ¶ 6<br>Functions: determining a [context]* for the natural language speech utterance; selecting at least one of the plurality of [domain agents]* based on the determined [context]*; transforming the recognized words or phrases into at least one of a question or a command, wherein the at least one question or command is formulated in a [grammar]* that the selected [domain agent]* uses to process the formulated question or command<br>*"context," "domain agent," and "grammar" as construed in Term Nos. 1, 4, and 5<br><br>Structure: Indefinite |

Like the "parser" term above, the term "determining, at a parser connected to the computer device on the vehicle, a context . . ." in claim 31 of the '720 Patent should not be construed as

25

being subject to § 112 ¶ 6 for the same reasons—the claim term describes in detail functions of the "parser," which functions include a determining step, a selecting step, and a formulating step; those functions connote a sufficiently definite structure. Further, the claim term specifically refers to the parser as being connected to "the computer device *on the vehicle*," which also supports that the term is not subject to § 112 ¶ 6. *See, e.g.*, *WSOU Invs. LLC,* 2023 WL 6889033, at *5 (finding the claimed "computer program code," "memory," and "processor" have definite structure on the ground that the claims recite "their *connections* with one another," which informs a person of skill in the art's understanding of each element's structure).

| Term |
|---|
| "parsing, at a parser coupled to the processing device, the one or more recognized words or phrases to determine a meaning associated with the utterance and a context associated with the request contained in the utterance, wherein the one or more recognized words or phrases are further associated with the determined context in response to the one or more recognized words or phrases satisfying the predetermined confidence level; formulating, at the parser, the request contained in the utterance in accordance with a grammar used by a domain agent associated with the determined context"<br><br>'006 patent, Cl. 1, 10 |

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Not subject to 35 U.S.C. § 112 ¶ 6,<br><br>The term "parser" should be accorded a plain and ordinary meaning or in the alternative, software that analyzes a string of words. | Subject to 35 U.S.C. § 112 ¶ 6<br><br>Functions: parsing the one or more recognized words or phrases to determine a meaning associated with the utterance and a [context]* associated with the request contained in the utterance, wherein the one or more recognized words or phrases are further associated with the determined [context]* in response to the one or more recognized words or phrases satisfying the predetermined confidence level; formulating the request contained in the utterance in accordance with a [grammar]* used by a [domain agent]* associated with the determined [context]*<br>*"context," "domain agent," and "grammar" as construed in Term Nos. 1, 4, and 5<br><br>Structure: Indefinite |

Like the "parser" terms above, the term "parsing, at a parser coupled to the processing

26

device, . . ." in claims 1 and 10 of the '006 Patent should not be construed as being subject to § 112 ¶ 6 for the same reasons. This "parser" term describes in detail functions including a parsing step and a formulating step. The claim term also specifically refers to the parser as being "coupled to the processing device." *See, e.g.*, *WSOU Invs. LLC,* 2023 WL 6889033, at *5.

| Term |
| --- |
| "parsing, at a parser coupled to the processing device, information relating to the utterance to determine a meaning associated with the utterance and a context associated with the request contained in the utterance, wherein the parsed information includes the one or more recognized words or phrases; formulating, at the parser, the request contained in the utterance in accordance with a grammar used by a domain agent associated with the determined context, wherein formulating the request in accordance with the grammar used by the domain agent includes: determining one or more required values and one or more optional values associated with formulating the request in the grammar used by the domain agent; extracting one or more criteria and one or more parameters from one or more keywords contained in the one or more recognized words or phrases, wherein the parser extracts the one or more criteria and the one or more parameters using procedures sensitive to the determined context; inferring one or more further criteria and one or more further parameters associated with the request using a dynamic set of prior probabilities or fuzzy possibilities; and transforming the one or more extracted criteria, the one or more extracted parameters, the one or more inferred criteria, and the one or more inferred parameters into one or more tokens having a format compatible with the grammar used by the domain agent, wherein the one or more tokens include all the required values and one or more of the optional values associated with formulating the request in the grammar used by the domain agent" <br><br> '006 patent, Cl. 5 |

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| Not subject to 35 U.S.C. § 112 ¶ 6, <br><br> The term "parser" should be accorded a plain and ordinary meaning or in the alternative, software that analyzes a string of words. | Subject to 35 U.S.C. § 112, ¶ 6   Functions: parsing information relating to the utterance to determine a meaning associated with the utterance and a [context]* associated with the request contained in the utterance, wherein the parsed information includes the one or more recognized words or phrases; formulating the request contained in the utterance in accordance with a [grammar]* used by a [domain agent]* associated with the determined [context]*, wherein formulating the request in accordance with the [grammar]* used by the [domain agent]* includes: determining one or more required values and one or more optional values associated with formulating the request in the [grammar]* used by the [domain agent]*; extracting one or more criteria and one or more parameters from one or more keywords contained in the one or more recognized words or phrases, wherein the parser extracts the one or more criteria and the one or more parameters using procedures sensitive to the |

| | determined [context]*; inferring one or more further criteria and one or more further parameters associated with the request using a dynamic set of prior probabilities or fuzzy possibilities; and transforming the one or more extracted criteria, the one or more extracted parameters, the one or more inferred criteria, and the one or more inferred parameters into one or more tokens having a format compatible with the [grammar]* used by the [domain agent]*, wherein the one or more tokens include all the required values and one or more of the optional values associated with formulating the request in the [grammar]* used by the [domain agent]*   *"context," "domain agent," and "grammar" as construed in Term Nos. 1, 4, and 5

Structure: Indefinite |
|---|---|

Like the "parser" terms above, the term "parsing, at a parser coupled to the processing device, . . ." in claim 5 of the '006 Patent should not be construed as being subject to § 112 ¶ 6 for the same reasons. Here, the structure is even more pronounced, because the functions of the parser are recited in great detail, including a formulating step, a parsing step, a transforming step, and an extracting step. Also, the claim term specifically refers to the parser as being "coupled to the processing device." *See, e.g.*, *WSOU Invs. LLC,* 2023 WL 6889033, at *5.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the disputed claim terms of the Asserted Patents be given either the constructions Plaintiff proposes, or where no construction is offered by Plaintiff, their plain and ordinary meaning.

Dated: March 13, 2024

/s/ Tara Zurawski
Walter D. Kelley, Jr. (VA Bar No. 21622)
Tara Zurawski (VA Bar No. 73602)
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
wkelley@hausfeld.com
tzurawski@hausfeld.com

Garland Stephens
garland@bluepeak.law
Robert Magee
robert@bluepeak.law
Richard Koehl
richard@bluepeak.law
Jeff Risher
jeff@bluepeak.law
Anna Dwyer
anna@bluepeak.law
Kate Falkenstien
kate@bluepeak.law
Heng Gong
heng@bluepeak.law
BLUE PEAK LAW GROUP LLP
Telephone: 281-972-3036

**CERTIFICATE OF SERVICE**

I certify that on March 13, 2024, the foregoing document, ***PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF***, was served on Defendants' counsel of record via CM/ECF.


*/s/ Tara Zurawski*
Tara Zurawski