**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

DIALECT, LLC,

    *Plaintiff*,

    v.

AMAZON.COM, INC., and
AMAZON WEB SERVICES, INC.,

    *Defendants*.

Civil Action No. 1:23-cv-581-DJN-LRV

**PLAINTIFF'S REBUTTAL CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  REBUTTAL ARGUMENTS....................................................................................... 1

    A.   "context" ...................................................................................................... 1

    B.   "context stack" and "context entries" ........................................................ 4

    C.   "grammar"..................................................................................................... 7

    D.   "domain agent" .......................................................................................... 11

    E.   "procedures sensitive to the determined context"...................................... 13

    F.   "parser" terms ............................................................................................ 15

III. CONCLUSION......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Inc. v. Raritan Comp., Inc.,*
325 F.3d 1364 (Fed. Cir. 2003)................................................................................15

*Applied Medical Resources Corp. v. U.S. Surgical Corp.,*
448 F.3d 1324 (Fed. Cir. 2006)................................................................................13

*Bicon, Inc. v. Straumann Co.,*
441 F.3d 945 (Fed. Cir. 2006)............................................................................11, 12

*CIAS, Inc. v. Alliance Gaming Corp.,*
504 F.3d 1356 (Fed. Cir. 2007)..................................................................................7

*GE Lighting Sols., LLC v. AgiLight, Inc.,*
750 F.3d 1304 (Fed. Cir. 2014)...............................................................................2, 5

*Hil-Rom Svcs., Inc. v. Stryker Corp.,*
755 F.3d 1367 (Fed. Cir. 2014)................................................................................12

*Intell. Ventures I LLC v. T-Mobile USA, Inc.,*
902 F.3d 1372 (Fed. Cir. 2018)............................................................................14, 15

*Interval Licensing LLC v. AOL, Inc.,*
766 F.3d 1364 (Fed. Cir. 2014)................................................................................14

*IQASR LLC v. Wendt Corp.,*
825 F. App'x 900 (Fed. Cir. 2020) ...........................................................................14

*Lone Star Silicon Innovations LLC v. Iancu,*
813 F. App'x 512 (Fed. Cir. 2020) ...........................................................................10

*Nazomi Commc'ns, Inc. v. Nokia Corp.,*
739 F.3d 1339 (Fed. Cir. 2014).................................................................................5, 6

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005)........................................................................ passim

*Profectus Tech. LLC v. Huawei Techs. Co.,*
823 F.3d 1375 (Fed. Cir. 2016)..................................................................................5

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,*
948 F.3d 1342 (Fed. Cir. 2020)................................................................................16

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC,*
    8 F.4th 1285 (Fed. Cir. 2021) ............................................................................................10

*Williamson v. Citrix Online, LLC,*
    792 F.3d 1339 (Fed. Cir. 2015)...........................................................................................17

*WSOU Invs. LLC v. Google LLC,*
    *No. 2022-1063,* 2023 WL 6889033 (Fed. Cir. Oct. 19, 2023)..............................................16

*WSOU Investments, LLC v. Xilinx, Inc.*,
    No. C.A. No. 20-1228-CFC-JLH, 2022 WL 2093066 (D. Del. June 10, 2022).......................18

**Statute**

35 U.S.C. § 112 ................................................................................................................ *passim*

## I.    INTRODUCTION

Dialect, LLC ("Dialect" or "Plaintiff") respectfully submits this rebuttal claim construction brief in response to Defendants Amazon.com, Inc. and Amazon Web Services, Inc.'s ("Defendants" or "Amazon") opening brief, dated March 13, 2024.

Defendants seek to construe ten terms from four Asserted Patents in this case, despite the fact that most are simple words or phrases that are easily understood. Defendants' proposed constructions are fundamentally flawed because they rely primarily on extrinsic evidence, including a fifty-page declaration from its litigation expert and numerous publications that bear little connection to the Asserted Patents. The Federal Circuit has instructed that claim construction should begin with a patent's intrinsic record—the claims, specification, and prosecution history— and should discount extrinsic evidence such as dictionaries, treatises, and declarations of retained experts. *Phillips v. AWH*, 415 F.3d 1303, 1314-21 (Fed. Cir. 2005). The Court should follow *Phillips* and reject Defendants' proposed constructions.[1]

## II.    REBUTTAL ARGUMENTS

### A.    "context"

| Claim Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "context" | '720 patent, claims 1, 31. '006 patent, claims 1, 2, 3, 5, 10. '468 patent, claims 19, 28. '039 patent, claims 17, 18. '957 patent, claims 1, 7. | Plain and Ordinary Meaning | a domain or application area that defines a set of questions that can be activated during a conversation |

---

[1] Defendants' expert set forth his definition of a person of ordinary skill in the art. Defs.' Br. Ex. 1, ¶ 45, ECF No. 158-3. While Plaintiff does not necessarily agree with that definition, Plaintiff's arguments apply with equal force regardless whether the Court adopts Plaintiff's definition or Defendants' definition.

As discussed in Plaintiff's opening brief, the term "context" has a plain and ordinary meaning that is easily understood by a person of ordinary skill in the art. Defendants' construction should be rejected for lacking intrinsic support and because it conflates how context is used by a specific embodiment with the meaning of the word itself.

*First*, Defendants' construction should be rejected because it seeks to import a limitation from one embedment from the patents. Defendants rely on a single sentence from the specification. *E.g.,* '468 Patent, 32:55-58 ("The voice query language may be sensitive to the contents of the context stack, wherein a context defines a set of questions that can be activated or deactivated during a conversation."). This single sentence does not support Defendants' construction, because it is limited to one embodiment, wherein a particular system "may support a voice query language," and the voice query language helps users "formulate concise questions and commands" and may be structured to "provide a grammar to clearly specify the keyword used to determine the context and present a set of one or criteria or parameters." *Id*. at 7:54, 32:44-52. The Court should reject Defendants' attempt to confine "context" to a specific embodiment in the patent. *See Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). The Defendants do not and cannot identify any intrinsic evidence that would support a departure from the plain and ordinary meaning of "context." *See also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("It is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited").

*Second*, Defendants largely rely on the patents' disclosure relating to "domain agent" to

2

support its construction of "context." The two terms are separate and different. As shown by the patent disclosure cited by Defendants, a domain agent may process user request or command *based on* a context, but that does not mean "context" should be *defined by* what a domain agent does with context. Defendants' arguments conflate how a specific embodiment *uses* context with the meaning of the term itself.

In fact, even the disclosures describing how context is used with "domain agent" cited by Defendants do not support their overly narrow construction of "context." Those disclosures generally describe a domain agent that processes a user question, request, command, or query, rather than questions alone as Defendants' construction would require. *E.g.*, '720 Patent, Cls. 1 and 31 ("at least one question or command is formulated in a grammar that the selected domain agent uses to process the formulated question or command"); '006 patent, Cls. 1, 5 and 10 ("formulating…the request contained in the utterance in accordance with a grammar used by a domain agent associated with the determined context"); '468 Patent, Cl. 19 ("communicating a request to the identified domain agent"); '039 Patent, Cl. 13 ("selecting one or more domain agents" based on the relevance score generated by comparing a user query with grammar).

*Finally,* the *VB Assets* claim construction decision highlights the same defect with Amazon's construction in both cases. The *VB Assets* court reasoned:

> That is, there is nothing in the term itself or the surrounding claim language to support Defendants' proposal. *Defendants rely on select disclosures from several of the patents to argue the "context" must mean "subject domain(s) that apply to a user utterance."* The cited portions, however, are either embodiments that may use a subject domain or domain agent or they don't mention subject domains at all, but Defendants argue that I should nevertheless read in a subject domain. Therefore, I reject Defendants' proposal, and decline to further construe the claims other than to reiterate that *the ordinary meaning of context does not require a subject domain or domain agent.*

Pl.'s Br. Ex. 7 at 9, ECF 159-7 (emphasis added).

As in *VB Assets*, Defendants seek to tie "context" to "domain" in a way that is not supported

3

by intrinsic evidence. The Court should reject Defendant's construction here, as did the *VB Assets* court.

**B.        "context stack" and "context entries"**

| Claim Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "context stack" | '006 patent, claim 2. '468 patent, claims 19, 28. '957 patent, claims 1, 3, 4, 7. '039 patent, claim 17. | Plain and Ordinary Meaning, or in the alternative a data structure that stores or references contexts | an ordered list of elements, each element storing or referencing a context |
| "context entries" / "entries in a context stack" | '957 patent, claims 1, 3, 4, 5, 7. '468 patent, claim 19. | Plain and Ordinary Meaning, or in the alternative, contexts or references to contexts | elements of an ordered list, each element storing or referencing the context associated with a prior utterance / elements of an ordered list, each element storing or referencing a context |

A person of ordinary skill in the art would easily understand the meaning of "context stack" and "context entries" given the clear patent disclosure. Defendants' constructions should be rejected because they seek to import an "ordered list" limitation from one embodiment and to contradict clear intrinsic evidence with extrinsic evidence.

*First*, as with the "context" term, Defendants fail to engage with most of the patent disclosure relating to "context stack" and "context entries." Instead, Defendants rely on a single sentence from a single embodiment of the patents: "Agents 106 may update a context stack, that includes an ordered list of command contexts, to enable follow-up requests." '468 Patent, 20:10-12. But even that single sentence fails to support Defendants' construction, because it merely states that a context stack *includes* an ordered list of command contexts, not that a context stack *is* an

4

ordered list of contexts as Defendants' construction requires. In any event, Defendants cannot limit those terms to that single embodiment. *See Philips*, 415 F.3d at 1323; *GE Lighting Sols., LLC*, 750 F.3d at 1309. Importantly, the patent claims explicitly distinguish between a "context stack" generally and a context stack with ordered entries, giving rise to a presumption that "context stack" is not so limited. *Compare* '957 Patent, Cl. 1 ("a context stack… wherein the context stack includes a plurality of context entries") *with* Cl. 3 ("The system of claim 1, wherein the plurality of context entries are ordered in the context stack…."). *See Phillips*, 415 F.3d at 1315 ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim"). Defendants cannot overcome this presumption.

*Second*, Defendants' extensive reliance on expert testimony and technical dictionaries is a red herring and does not help the Court. "[E]xtrinsic evidence in general [is] less reliable than the patent and its prosecution history in determining how to read claim terms". *Id.* at 1318. "[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history". *Id.* (internal citation omitted). Here, intrinsic evidence provides clear disclosure of "context stack." The Court should construe "context stack" in view of clear intrinsic evidence and reject Defendant's construction that improperly relies on extrinsic evidence. *See Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) ("Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.") (quoting *Phillips*, 415 F.3d at 1324). Defendant's reliance on *Nazomi* is inapposite. The *Nazomi* case concerns the construction of the term "stack-based instructions" in patents describing hardware-based programming language translator program for central processing unit (CPU). That case is not applicable to the disputed claim terms of the Asserted Patents, which describe an entirely different technology—

5

natural language understanding. *See Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1340-43 (Fed. Cir. 2014).

*Finally*, the Defendants propose different constructions for "context entries" in the '957 Patent and "entries in a context stack" in the '468 Patent. Defendants propose that the former must be associated with a prior utterance, whereas the latter need not. That distinction is not supported by intrinsic evidence. The exemplary claim language from both patents is pasted below (with emphasis added). Those claims describe the terms in a similar way—a context stack contains entries or context entries, and one or more such entries are compared with user input to determine its context. The patent specifications are consistent and do not indicate that the terms should be construed differently. *See, e.g.*, '957 Patent, 37:8-12 ("Part of the dialog history is maintained in a context stack. The weight of each context for the scoring may be based on the relevance of one context to another and the age of the contexts."); '468 Patent, 36:13-16 (same), 20:19-22 ("The knowledge enhanced speech recognition may access a set of expected contexts that are stored in a context stack to determine a most likely context.").

| '468 Patent | '957 Patent |
| --- | --- |
| Claim 19<br>…<br>transcribes the non-speech input to create a non-speech-based transcription;<br>…<br>creating a speech-based transcription of the natural language utterance<br>…<br>***identifying one or more entries in a context stack matching information contained in the merged transcription***;<br><br>determining a most likely context for the multi-modal input based on the identified entries…<br><br>(emphasis added). | Claim 1<br>…<br>***determine one or more words of the natural language utterance*** by performing speech recognition on the natural language utterance;<br>…<br>generate a context stack comprising context information that corresponds to a plurality of prior utterances, wherein the ***context stack includes a plurality of context entries***;<br>…<br>***identify, from among the plurality of context entries, one or more context entries that correspond to the one or more words, wherein the context information includes the one or more context entries***, wherein identifying the one or more context entries comprises: |

| | | |
|---|---|---|
| | *comparing the plurality of context entries to the one or more words*; … | |
| | (emphases added). | |

Defendants argue that their proposed distinction is based on the difference in the claim language of the two patents—the claims of '957 Patent recite "prior utterances" whereas the claims of the '468 Patent do not. But Defendants' construction is inconsistent with the use of the term in the claim. It should be rejected because it would require *all* claimed context entries to be associated with prior utterances when the claim language clearly requires only that context stack *comprise* information that corresponds to a plurality of prior utterances, not that it *consist only* of context entries associated with prior utterances. *See, e.g., CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360-61 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' is well understood to mean 'including but not limited'… the terms 'comprise' and 'consist' have different meanings…") (internal citations omitted).

C.    **"grammar"**

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "grammar" | '720 patent, claims 1, 31; '006 patent, claims 1, 5, 10; '039 patent, claim 13 | Plain and Ordinary Meaning, or in the alternative a set of principles that govern an acceptable input or request | a formal specification of the permissible structures for a language |

The Federal Circuit's *en banc* decision in *Phillips* held that this Court's claim construction process should begin with a patent's intrinsic record—the claims, specification, and prosecution history—and should discount extrinsic evidence such as dictionaries, treatises, and declarations of retained experts. *See Phillips,* 415 F.3d at 1314-21. Amazon's approach to construing "grammar"

(Defs.' Br. at 10-12, ECF 158) turns *Phillips* on its head by relying entirely on extrinsic evidence and only afterwards arguing that Amazon's construction is consistent with the patents. But Amazon's proposed construction contradicts the patents' claims and specifications and should be rejected.

*Phillips* explained that "extrinsic evidence in general [is] less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons." 415 F.3d at 1318. Among those reasons,

> extrinsic evidence by definition is not part of the patent and does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning…. [T]here is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question. In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff.

*Id.* Amazon's proposal that a "grammar" is "a formal specification of the permissible structures of a language" is pulled straight from a textbook page that "review[s] the basic concept of Chomsky's formal language theory." Defs.' Br. Ex. 2 at AMZ_VB_00008739, ECF No. 158-4. This is exactly the kind of abstract "fluff" of "marginal relevance" that *Phillips* warned against. 415 F.3d at 1318. Amazon's reliance on the testimony of its retained expert Prof. Johnson is also unavailing, as "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.*

*Phillips* instructed that this Court should look instead to the claims— "the context in which a term is used in the asserted claim can be highly instructive" —and the specification, which "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1314-15. The claims and specifications never mention Noam Chomsky, formal language theory, or permissible "structures of a language" as in

Amazon's construction. Instead, they point to a "grammar used by a domain agent" or a "context description grammar" associated with a domain agent, including what are acceptable inputs or requests to that agent. For example, asserted Claim 5 of the '006 Patent includes the step of

> formulating, at the parser, the request contained in the utterance in accordance with *a grammar used by a domain agent* associated with the determined context, ….

'006 Patent, 27:30-32 (emphasis added). Consistent with Claim 5—but contrary to Amazon's proposed construction—the '006 Patent specification describes an embodiment in which questions or commands are transformed into a format that is an acceptable input or request *to an agent*:

> Once the context and the criteria are determined, the parser 118 may form the question or command in a *standard format* or hierarchical data structure used for processing *by the agents* 150, 156. The parser 118 may fill in all required and some optional tokens for the grammar of the context. Often the tokens must be transformed to *values and forms acceptable to the agents*. The parser obtains the required transformations from the agents, dialog history or user profile 110. Examples of transformations or substitutions performed by the parser on tokens include:
> substituting a stock symbol for a company name or abbreviation;
> substituting a numerical value for a word or words;
> adding a zip code to an address; and
> changing a place or other name to a commonly used standard abbreviation.
>
> The agents 150, 156 may receive a command or question once the parser 118 has placed it in *the required standard format*. Based on the context, the parser 118 evokes the correct agent to process the question or command.

*Id.* at 18:50-19:1 (emphases added). Fig. 6 of the '006 Patent, at right, also depicts "a process for determining the proper domain agents to invoke and *the properly formatted queries and/or commands that is to be submitted to the agents*". *Id.* at 9:3-5 (emphasis added); *see also id.* at 24:54-25:47 & Fig. 6. Chomsky's formal language theory is nowhere in sight, and in any event the "formal specification" and "permissible structures of a language" in Amazon's definition contradict the teachings of the asserted



FIG. 6

patents' claims and specifications, which require that the grammar govern an acceptable input or request **to an agent**. The other asserted patents' claims and specifications are also consistent with Plaintiff's proposed construction, not Amazon's. *See, e.g.*, '720 Patent, Cl. 1 at 32:61-64 ("wherein the at least one question or command is formulated in a grammar that the selected domain agent uses to process the formulated question or command"); *id.* at 28:25-31; '039 Patent, Cl. 13 at 30:48-54 ("comparing the text combinations to entries in a context description grammar; accessing a plurality of domain agents that are associated with the context description grammar; generating a relevance score based on results from comparing the text combinations to entries in the context description grammar;"); *id.* at 3:23-25, 12:40-42, 28:32-29:23 & Fig. 6.

The cases cited by Amazon do not change the result. *Lone Star Silicon Innovations LLC v. Iancu*, 813 F. App'x 512 (Fed. Cir. 2020) states that "the intrinsic evidence lacks the needed clarity to import a … requirement [from the specification] into the claimed channel region." *Id.* at 518. In *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285 (Fed. Cir. 2021), the court was reviewing a construction decided under the "broadest reasonable interpretation" standard, which differs from and is inapplicable to the *Phillips* standard this Court must invoke. *See id.* at 1287; *see also Lone Star*, 813 F. App'x at 514-15, 517 & n.2.

Accordingly, for the foregoing reasons and as set forth in Plaintiff's opening brief, this Court should reject Amazon's proposed construction and should hold that "grammar" be construed to have its plain and ordinary meaning, or in the alternative, should construe "grammar" as "a set of principles that govern an acceptable input or request."

### D.    "domain agent"

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|------|----------------|----------------------|----------------------|
| "domain agent" | '720 patent, claims 1, 31. '006 patent, claims 1, 2, 5, 10. '468 patent, claims 19, 30, 32. '039 patent, claims 13, 14. | software with domain-specific behavior and information | a software package or module that receives, processes and responds to user questions, queries and commands in a specific domain |

Amazon's opening brief asks this Court to adopt a proposed interpretation of "domain agent," but Amazon provides virtually no evidence or argument in affirmative support of its interpretation. *See* Defs.' Br. at 13-14, ECF 158. At no point does Amazon explain why its proposed interpretation is consistent with the intrinsic evidence—the claims, specification, and prosecution history—in accordance with *Phillips*. *See* 415 F.3d at 1314-17. Amazon instead spends the bulk of its argument attacking a construction that it knows Dialect is not advancing. *See* Defs.' Br. at 14 n.5, ECF 158. Yet Amazon's brief concedes, in language nearly identical to Dialect's proposed construction, that a "domain agent … provides domain-specific behavior and data for a specific area of functionality." *Id*. at 14. Amazon agreed to Dialect's interpretation in previous litigation involving patents with common inventors covering similar technology (*see* Pl.'s Br. at 17 & Ex. 7, ECF 159 & 159-7), and this Court should adopt the same interpretation.

As Plaintiff's opening brief explained, Defendants' interpretation of "domain agent" is inconsistent with the claimed inventions and should be rejected.  Amazon's inclusion of "receive, process, and respond" overlaps with but modifies other claim language and would render it superfluous. Claim 19 of the '468 Patent, for example, includes steps of:

> *identifying a domain agent* associated with the most likely context for the multi-modal input;
>
> *communicating a request* to the identified *domain agent*; and
>
> *generating a response to the user from content provided by the identified domain agent* as a result of processing the request.

11

'468 Patent, Cl. 19, 40:66-41:5 (emphases added). *See also* '720 Patent, Cls. 1 and 31; '006 Patent, Cls. 1, 2, 5 and 10; '468 Patent, Cls. 30 and 32; '039 Patent, Cls. 13 and 14. "The purpose of a patent claim is to define the precise scope of a claimed invention …. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

Amazon also improperly attempts to import the specification into the claims by picking and choosing from embodiments described in the specification to add limitations that are extraneous to the claimed inventions. "While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims." *Hil-Rom Svcs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The specifications say, for example, that agents "***may provide*** complete, convenient and re-distributable packages or modules for each application area[,]" not that they ***are*** packages or modules as Amazon contends. *E.g.*, '720 Patent, 21:41-43 (emphasis added); *see also id.* at 4:8-10; '006 Patent, 2:6-63, 11:32-34; '468 Patent, 27:18-20; '039 Patent, 14:43-44.

Finally, to construe domain agents as having "domain-specific behavior and information" (in accordance with Plaintiff's contention) is not to construe them as being limited to user inputs "in a specific domain" (as Amazon's construction would have it). The specifications of the Asserted Patents explain that domain agents can be ***generalized*** and can support other domain agents. "More specialized domain agents can use the functionality of more generalized domain agents." '720 Patent, 4:38-40. *See also*, *e.g.*, *id.* at 4:18-19 ("Agents can use system resources and the services of other, typically more specialized, agents."), 21:49-50 ("Agents can use the services of other, typically more specialized, agents and the system agent."); '006 Patent, 3:1-2 ("Agents can use system resources and the services of other, typically more specialized, agents."), 11:39-41

12

("Domain agents may use the services of other, typically more specialized, agents and the system agent."); '468 Patent, 27:66-28:2 ("The various domain agents 156 may use the services of the system agent 150 and of other, typically more specialized, domain agents 156."); '039 Patent, 15:23-26 (same). Amazon does not identify any other term in a patent claim that supposedly conflicts with Dialect's definition of "domain agent," and in any event Amazon's brief misquotes *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006). The sentence misquoted by Amazon states in full: "In other words, the use of two terms in a claim requires that they connote different *meanings*, not that they necessarily refer to two different *structures*." *Id.* at 1333 n.3 (emphases in original).

For the foregoing reasons, and in accordance with Amazon's agreed construction in the *VB Assets* litigation (*see* Pl.'s Br. at 17 & Ex. 7, ECF 159 & 159-7), the Court should construe "domain agent" to mean "software with domain-specific behavior and information."

### E. "procedures sensitive to the determined context"

| Term | Patents/Claims | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| "procedures sensitive to the determined context" | '006 patent, claim 5. | Plain and Ordinary Meaning, or in the alternative procedures that consider the determined context | Indefinite under 35 U.S.C. § 112. |

Amazon's entire argument rests on the premise that "to be sensitive" to a determined context, as the claim recites, is a term of degree. Defs.' Br. at 15-16, ECF 158. However, there is nothing in the claims or the specification that supports such a conclusion. The claims do not require, for example, that the procedures to be *very* sensitive or *minimally* sensitive, only that the procedures be sensitive to the determined context in some way:

> 5. A method for processing natural language speech utterances with context-specific domain agents, comprising:

13

…

> extracting one or more criteria and one or more parameters from one or more keywords contained in the one or more recognized words or phrases, wherein the parser extracts the one or more criteria and the one or more parameters using *procedures sensitive to the determined context*;

'006 Patent, Cl. 1 (emphasis added). Indeed, Amazon's brief provides specific examples of context sensitive procedures described in the specification and admits that the "specification describes general categories of ways one could determine criteria." (Defs.' Br. at 15, ECF 158). Amazon's reading of additional limitations into the claim language to support its argument of indefiniteness should be rejected.

The only other evidence Amazon offers is the *ipse dixit* of its expert that "sensitive" is a term of degree and a subjective term. Decl. of Dr. Michael Johnson ¶¶ 110-19, ECF 158-1. Amazon's expert provides a list of hypothetical situations where he claims that he could not determine whether the claim limitation is met, *id.* ¶ 117, which essentially boils down to a quibble over how sensitive the procedures need to be. However, a person of ordinary skill in the art would not have difficulty ascertaining the bounds of the claim, because the claim simply does not require a specific degree of sensitivity. Dialect's expert came to the exact opposite conclusion when reading the claim. Decl. of Dr. Jagadish, ¶¶ 13-16.

The cases cited by Amazon are inapposite. In *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 906 (Fed. Cir. 2020) (nonprecedential), the court found that the term "magnetic fuzz" was a "coined term" that had no definition prior to the filing of the patent application and that the specification provided no clues as to its meaning. Here, the term "sensitive" can be readily understood by a layman and is used in everyday parlance. The other cases cited by Amazon stand for the unremarkable proposition that a term that is entirely subjective or has different meanings for different users is indefinite. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371

14

(Fed. Cir. 2014) (finding that the term "unobtrusive manner" to be highly subjective and finding no guidance in the specification); *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018) (finding the claimed "'QoS requirements' [] entirely subjective" where the patent specification itself "characterize[d] it as 'a relative term, finding different meanings for different users'") (internal citation omitted). There is nothing similar for the term "procedures sensitive to the determined context" here. If the procedures are sensitive *at all* to the determined context, then the claim limitation is met.

For the foregoing reasons, the term "procedures sensitive to the determined context" should not be found indefinite and should be accorded a plain and ordinary meaning, or in the alternative construed to be "procedures that consider the determined context."

### F.    "parser" terms[2]

As Amazon admits, there is a rebuttable presumption that "§ 112, ¶ 6 does not apply when the claim language does not include the terms "means" or "step for." Defs.' Br. at 18, ECF 158. Here, that presumption has not been rebutted. Amazon does not cite a single case where a court has found that the term "parsing" or "parser" is a substitute for "means" in a claim, nor has Dialect located one. There is insufficient evidence for this Court to be the first. The terms should be accorded their plain and ordinary meaning.

Amazon's argument narrowly and selectively quotes the claim terms that it seeks to construe, minimizing and ignoring the structure included in the claim terms themselves. The Federal Circuit has held that one must look at the limitation as a whole, rather than focusing on a single word. *Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003). The claim

---

[2] For brevity, Plaintiff refers to its opening brief for the parties' proposals for the parser terms and does not repeat them here.

terms not only describe the function that is to be performed by the parser or "parsing," but also explain how that parser performs these functions. For example, the claim term to be construed in claims 1 and 10 of the '006 Patent requires:

> parsing, at a parser coupled to the processing device, the one or more recognized words or phrases to determine a meaning associated with the utterance and a context associated with the request contained in the utterance,
>
> wherein the one or more recognized words or phrases are further associated with the determined context in response to the one or more recognized words or phrases satisfying the predetermined confidence level;
>
> formulating, at the parser, the request contained in the utterance in accordance with a grammar used by a domain agent associated with the determined context…

'006 Patent, Cls. 1 and 10.

As shown above, the claim term itself provides specific requirements that explain how the parser performs the relevant steps including, for example, associating the recognized words or phrases with the "determined context" and formulating the request "in accordance with a grammar used by a domain agent." Additionally, the claims explicitly require a parser to be "coupled to the processing device" and explains how it interacts with the "recognized words" from earlier limitations in the same claim. *See Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,* 948 F.3d 1342, 1353-54 ("digital processing unit … performing [functions]" found to be sufficiently definite structure in part because the claims provided operational context for the unit); *WSOU Invs. LLC v. Google LLC*, No. 2022-1063, 2023 WL 6889033, at *5 (Fed. Cir. Oct. 19, 2023) (explaining that "claim limitations like the recited 'computer program code,' when combined with a description of what the code is intended to accomplish, convey definite structure to the ordinarily skilled artisan"). The other claims follow a similar set of requirements. *See, e.g.* claim 1 of the '720 patent (specifying how the parser interprets "by: determining a context for the natural language" . . . and "selecting at least one of the plurality of domain agents based on the determined context[.]"

16

*See also* Decl. of Dr. Jagadish, ¶¶ 17-22.

Amazon also argues that the term "parser" would have been known to a person of ordinary skill in the art, but that it would not have been known for performing the set of functions that are recited in the claims. This is incorrect. As explained by Dr. Jagadish, a person of ordinary skill in the art would have understood that a parser would necessarily "have an output and the claims specify function performed by the parser in furtherance of that goal." Decl. of Dr. Jagadish, ¶¶ 21-22. The functions listed are not required of all parsers, but are not at odds with what a person of ordinary skill would understand a parser to do.

The cases cited by Amazon are inapposite. Amazon repeatedly cites *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015), but this case is easily distinguished. There, the claim term in question was:

> distributed learning control module
>
> for receiving communications transmitted between the presenter and the audience member computer systems and
>
> for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module.

*Id*.

There were several factors that led the Federal Circuit to find that 35 U.S.C. § 112 ¶ 6 applies that are not present in the '720 and '006 Patents at issue here. First, the court noted that the claim followed a traditional means-plus-function format, i.e. the term "module" followed by "for" functions. *Williamson*, 792 F.3d at 1350. There is no such language in the '720 or '006 patent claims. Second, the court found that the word "module" was a "well-known nonce word" that many courts had found to be a substitute for "means." *Id.* Amazon does not and cannot argue that "parser" would fall into that category and offers no cases in support. And third, the court found that the claim limitation did not describe how the module would interact with the "server"

17

in the claim.  *Id.* at 1352.  Here again, this is not the case.  As discussed above, the claims here provide operational context from the rest of the patent claim, including that the parser is coupled to the processing device and interacts with the previously "recognized words."  *See e.g.,* '006 Patent, Cl. 1.

Amazon argues that the term "analyzer" in the *WSOU Investments, LLC v. Xilinx, Inc.*, No. C.A. No. 20-1228-CFC-JLH, 2022 WL 2093066, at *1 (D. Del. June 10, 2022) (unreported) case is similar to the term "parser" here.  Defs.' Br. at 22, ECF 158.  However, the two are different. There, the claim term only required "an analyzer configured (i) to analyze spectral power of an input signal corresponding to the carrier and data signals, the spectral power being in a spectral band corresponding to a spectral null of the input signal, and (ii) to generate a control signal based on the analysis." *WSOU Invs., LLC,* 2022 WL 2093066, at *1.  Thus, "analyzer" there was only required to analyze the power of an input signal and generate a control signal based on it.  There was no explanation of how the analysis was to be performed or even what kind of analysis.  The "parser" terms here contain specific requirements about how to parse the inputs, such as in claim 1 of the '006 patent which requires determining "a meaning associated with the utterance and a context associated with the request contained in the utterance, wherein the one or more recognized words or phrases are further associated with the determined context in response to the one or more recognized words or phrases satisfying the predetermined confidence level" and "formulating, at the parser, the request contained in the utterance in accordance with a grammar used by a domain agent associated with the determined context." '006 Patent, Cl. 1. Further, for at least the "parser" terms in the '006 and claim 31 of the '720 patent, there is a specific tie between the parser and the physical structure of the claimed invention.  *See* '006 Patent, Cls. 1, 5 and 10 ("parsing, at a parser coupled to the processing device,"), '720 Patent, Cl. 31 ("determining, at a parser connected to the

computer device on the vehicle").  This did not apply to the "analyzer" in *WSOU Investments, LLC*.

Because the claims are not subject to § 112 ¶ 6, no further analysis is necessary as to the exact function and disclosed structure for each of the four claims.  For the foregoing reasons, the "parser" terms should be accorded their plain and ordinary meaning.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the disputed claim terms of the Asserted Patents be given either the constructions Plaintiff proposes, or where no construction is offered by Plaintiff, their plain and ordinary meaning.

Dated: March 29, 2024

*/s/ Tara R. Zurawski*
Walter D. Kelley, Jr. (VA Bar No. 21622)
Tara Zurawski (VA Bar No. 73602)
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
wkelley@hausfeld.com
tzurawski@hausfeld.com

Garland Stephens
garland@bluepeak.law
Robert Magee
robert@bluepeak.law
Richard Koehl
richard@bluepeak.law
Jeff Risher
jeff@bluepeak.law
Anna Dwyer
anna@bluepeak.law
Kate Falkenstien
kate@bluepeak.law
Heng Gong
heng@bluepeak.law
BLUE PEAK LAW GROUP LLP
Telephone: 281-972-3036

19

**CERTIFICATE OF SERVICE**

I certify that on March 29, 2024, the foregoing document, ***PLAINTIFF'S REBUTTAL***

***CLAIM CONSTRUCTION BRIEF***, was served on Defendants' counsel of record via CM/ECF.


*/s/ Tara R. Zurawski*
Tara Zurawski (VA Bar No. 73602)