UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                        Alexandria Division

DIALECT, LLC,                          :      Civil Case
                                       :      No. 1:23-cv-00581-DJN-LRV
              Plaintiff                :
         v.                            :
                                       :
AMAZON.COM, INC., et al.,              :      April 8, 2024
                                       :      10:30 a.m.
              Defendants               :
.............................          :      ........................

                    TRANSCRIPT OF MARKMAN HEARING
                BEFORE THE HONORABLE DAVID J. NOVAK
                   UNITED STATES DISTRICT JUDGE

  APPEARANCES:

  FOR THE PLAINTIFF:          GARLAND TEMPLE STEPHENS
                              RICHARD KOEHL
                              JUSTIN CONSTANT
                              BLUE PEAK LAW GROUP, LLP
                              3139 W. Holcombe Blvd.
                              PMB 8160
                              Houston, TX 77025
                              281-372-3036

                              HENG GONG
                              BLUE PEAK LAW GROUP, LLP
                              21 Kensington Road
                              Scarsdale, NY  10583  10583
                              281-372-3036

                              TARA LYNN RENEE ZURAWSKI
                              BUNSOW DE MORY, LLP
                              701 El Camino Real
                              Redwood City, CA 94063
                              650-351-7248

  FOR THE DEFENDANTS:         JOE DAVID HADDEN
                              DONNA TANG LONG
                              FENWICK & WEST, LLP
                              Silicon Valley Center
                              801 California St
                              Mountain View, CA 94041
                              650-988-8500
                              (APPEARANCES CONTINUED ON NEXT
                              PAGE:)

                 *Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

FOR THE DEFENDANTS:          GEOFFREY ROBERT MILLER
                             FENWICK & WEST, LLP
                             902 Broadway
                             Suite 18
                             New York, NY  10010
                             212-430-2600

                             ROBERT ARMISTEAD ANGLE
                             LAURA ANNE KUYKENDALL
                             TROUTMAN PEPPER HAMILTON
                             SANDERS, LLP
                             1001 Haxall Point
                             Suite 1500
                             Richmond, VA  23219
                             804-697-1200


OFFICIAL COURT REPORTER:     REBECCA STONESTREET, RPR, CRR
                             U.S. District Court, 9th Floor
                             401 Courthouse Square
                             Alexandria, Virginia  22314
                             (240) 426-7767


                        (Pages 1 - 33)


        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

**P R O C E E D I N G S**

COURTROOM CLERK:  Civil action 1:23-CV-581, |Dialect, LLC versus Amazon.com, Inc., et al.

If each party would please stand, introduce themselves and their client.

MS. ZURAWSKI:  Good morning, Your Honor.  Tara Zurawski from the law firm of Bunsow De Mory, on behalf of plaintiff, Dialect LLC.  And with me today from the Blue Peak law firm is Garland Stephens.

MR. STEPHENS:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. ZURAWSKI:  Heng Gong.

MR. GONG:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. ZURAWSKI:  Richard Koehl and Justin Constant.

THE COURT:  Good morning.

So Ms. Zurawski, am I saying that right?  Are you going to have the point, then, for the plaintiffs?

MS. ZURAWSKI:  I'm sorry?

THE COURT:  Are you going to do the talking today?

MS. ZURAWSKI:  I am not.

THE COURT:  Who's got the lead?  That's what I need to know.

MR. STEPHENSON:  Your Honor, I'm lead counsel, but my colleagues will be doing most of the arguing today.

THE COURT:  Well, I want to tell you, this is going to go completely opposite of what you-all planned on anyhow.  So I just need to know who I'm going to call on.  Argument in front of me is a little bit of a different duck here.

MR. STEPHENS:  Okay.

THE COURT:  So I know you gave me some really nice stuff here, but I've got my own kind of view of what we're going to do here.

MR. STEPHENS:  Understood, Your Honor.

THE COURT:  So I just want to know who I'm going to call on for questions.  So it's you, Mr. Stephens?

MR. STEPHENS:  Well, Your Honor, I may not be fully prepared to answer all of your questions, so I hope if you will indulge me to allow my colleagues if I don't.  I will attempt to.

THE COURT:  Look, I'm Mr. Informal, but I've got my own way of doing things.  Okay?  I want to give you-all a chance to be heard.  I've got some really smart law clerks, we've been working our tails off on this to figure out what's going on.  Now I actually kind of have a handle on it.  You may not think so, but I kind of do.  And we're going to do a little pivot here from what our original plan was.

The way I like to do argument is this:  I like to say, here's what I'm thinking, you tell me why I'm wrong, and I'm going to give you some time to do some supplemental.  Because

I'm hitting you out of nowhere, and all of this work that you just put in here billing your clients all this money might be a little bit different than what you thought it was going to be.

But you've got to remember, this is all about me trying to get the right answer for you.  I want to do a good job for you.  I do not want to screw this up.  So if you just roll with me, we'll be okay.  Does that sound like a plan to you?

MR. STEPHENS:  Understood, Your Honor.  Of course.

THE COURT:  All right.  So who for the defense now is going to -- oh, Mr. Angle, thank God I have a voice of reason here.  And you brought your secret weapon with you from Richmond as well, I see.

MR. ANGLE:  Judge, I really appreciate it.  And I can't claim to have much of a speaking role other than to introduce co-counsel, who will be providing answers to your questions.

So you know myself, of course, and L.A. Kuykendall from Troutman Pepper.  But Dave Novak right here with Fenwick & West.

MR. HADDEN:  Dave Hadden.

THE COURT:  What's your last name?

MR. ANGLE:  I'm sorry, Hadden.  Hadden.

MR. HADDEN:  Dave Hadden, Your Honor.

THE COURT:  I was going to say, did you change your name for this --

MR. ANGLE:  Sorry.  Well, I figured that would help with the argument, you know.

THE COURT:  Okay.  So it's Mr. Hadden?

MR. HADDEN:  Yes, Your Honor.

THE COURT:  Okay.

MR. ANGLE:  And Donna Long.

THE COURT:  Good morning.  How are you?

MR. ANGLE:  And Geoff Miller.  I think they've divided up what they're going to cover, so depending on the question...

MR. HADDEN:  We have.  But if you want to shoot questions to someone, it should be me, Your Honor.

THE COURT:  So here's what we're going to do now.

MR. ANGLE:  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Angle.  As Mr. Angle can tell you, I am not -- I'm a true believer in the rocket docket. You heard that a little bit on our calls we did before.  I'm trying to move things along.

But it has become clear to me now that having looked at the things that you have given me, that summary judgment is going to play a bigger role here than I originally thought, particularly because -- now, you've got to remember, I didn't know anything about this case at the time we did the call.  But particularly because my colleague, Judge Ellis, deferred ruling on I think all but one of the claims in the motion to dismiss.

So having looked at this now, I think there is a much better way to attack this, in the sense that I can do my best job for you, which is what I just said to you.  And I definitely

want to do that.  So I want to make a little bit of a pivot to you.

First thing we're going to do is we're going to change the schedule a little bit.  Okay?  Then the next thing we're going to do is go through each of the claims.  And I'm going to ask you a couple of questions, but I'm also going to tell you, as I understand it from the law, I can do my own construction, and I think I have some different ideas that I want to float to you.

I'll give you a chance to orally give me your thoughts, but because it plays such a big deal in this case, I'm going to give you a week to give me a supplemental filing not exceeding 10 pages telling me your thoughts on some of my constructions, just to make sure I know what I'm doing.  Right?  Because I don't want to blind-side you, particularly -- you spent all this work putting these things together and I'm not going to look at these today.

So does that sound reasonable to you-all?  I hope the answer is yes.

MR. HADDEN:  Yes, Your Honor.  I mean, we're here to help you understand.

MR. STEPHENS:  Yes, Your Honor.

THE COURT:  So here's what I'm thinking.  All right?  Right now we have discovery closing on June 24th.  That's going to remain the same.  We have summary judgment due July 3rd, but

it seems to me -- I think one of you, maybe it was Amazon, intimated that you want to have extra paging and all that stuff, but I think the answer is, we're going to bifurcate the summary judgment briefing.  I think we're going to do the first round of summary judgment briefing about *Markman* issues.  You'll get my opinion hopefully in the next couple of weeks, okay, and then I'll give you 10 days after my ruling on the *Markman* issue to file your summary judgment for *Markman*-related issues, including any *Alice* issues.  Okay?

Then we'll keep the same -- the current schedule for summary judgment of July 3rd for non-*Markman* related issues.  Is everybody with me so far?

MR. HADDEN:  Could I ask a question?

THE COURT:  Yes.

MR. HADDEN:  So would you consider 101 continuing from Judge Ellis' ruling non-*Markman* or *Markman*?

THE COURT:  I think you put that into *Markman*.  But look, I'm flexible about this.  Maybe the thing to do is this. I'm going to give you this schedule, you-all digest it, and I'll give you an extra -- you can do another filing in a week, three pages, with any suggestions that you want about the schedule. How does that sound?

MR. HADDEN:  That sounds --

THE COURT:  We have a soft draft going, but remember, this is all about timing so I can do a good job for you.  Okay?

So let's roll with this and then you'll go from there. Okay?

Now, because of this briefing, it seems to me that the earliest that the summary judgment motions will be ripe is July 20th.  And I have a sneaking suspicion at least somebody will probably ask me for a little bit more time than the normal 14 and 6 on responses and replies, but I'll deal with that down the road.

So we're not going to do the trial in October.  What we are instead going to do is this:  We will keep the September 4th date that we have for a *Daubert* hearing, if necessary, and if I were to need argument on summary judgment -- I generally do summary judgment off the papers, but sometimes it's helpful to me just to bounce some things off of you to see that I'm not going off the rails.  So if I do decide summary judgment argument would be helpful, we would do that on September 4th.

What we are going to do instead is, we were originally going to have -- so I'm cancelling the final pretrial conference for October 8th and jury selection that was October 25th.  I do want you to have another settlement conference in front of Judge Vaala no later than July 31st.

Now, I know you have one coming up here.  I can't remember when it is.  But my guess is, it's currently scheduled before you'll probably get my *Markman* ruling.  So why don't you all, when we're done, contact Judge Vaala's chambers, tell her

that I indicated I think it would be more productive for everybody if you pushed it back to no later than July 31st. If you want to do it in June -- you know, my thought is, you'll see my ruling, maybe you'll see each other's summary judgment positions, you'll kind of have a little bit of handle more on the case. That's general a laxative for settlement, in my view. All right?

So why don't you look for a date in July with her. But I want you to go for the gold then. So I'm giving you more time -- you know, I can't make you settle, but if I give you the road map a little bit, I'm expecting you to give me the college try. Give it all you have to see if you can get it done, such that I know that if you don't have it settled by the end of July, I am trying this case. Okay?

And that helps me -- you have to remember too, I'm doing two dockets right now in two different cities. It's not easy. Okay? I can work pretty hard, but there's only so many hours in a day. So I need your help on this. All right?

So instead of having openings and evidence on October 28th, we're going to have a status hearing. By the way, I'm moving everything back to Alexandria. Sorry, Richmond folks, your going to be on the road like me. Okay? We're all in this together.

On October 28th, 10 a.m., we're going to have a status hearing, and what that is going to tell me -- if you haven't

settled the case, I will then know -- I will have ruled on summary judgment at least a week before that, okay, so that we all know, this is what the parameters of the case is.  Okay?  And so while I'll have a functioning scheduling order going, we can tweak it such that -- this stuff is too technical for me to wing it, so I want to have enough time that I can really kind of digest what you're saying, again, so I can do a good job.

I'm moving the case, then, to May.  We're going to try this case with jury selection on May 9th of next year, opening and evidence on May 12th, and I'll give you until May 23rd.  We'll have a final pretrial conference on Tuesday, April 29th, at 10 a.m.

Mr. Stephens, does that work for the plaintiff?

MR. STEPHENS:  I believe it does, Your Honor.

THE COURT:  Mr. Hadden, can you live with that?

MR. HADDEN:  I believe it does.  I do have to check my trial calendar, but I think May is open.  And I work for a firm, so...

THE COURT:  That's a long time.  All right.  But the status hearing, we might tweak some stuff.

Now, one of the things also I'm going to want to do is this:  I gave you a original trial schedule, but I'm going to move some of those deadlines around.  Particularly I want to see what the jury instructions that you are proposing are going to look like.

And I'm going to want to have that wrapped up by Christmas, for two reasons. One, if I make you do it in January, that means you're going to screw your associates over the holidays, and I don't believe in doing that.

Two, I want to make sure it's all done, because in January, when I get done with my holiday, I'm going to want to take a look at it and -- you know, jury instructions are critical in this line of work, and I want to make sure we're all on the same page. And if we have to have some other hearing, I have time to put it in.

I'm going to be in trial in a national security case in basically all of March, so I need to balance what I'm doing between the two.

So that's kind of where I'm at in terms of scheduling. I tell you what we'll do is, we were going to get an order out today, but I'm going to let you-all digest this -- can you get me something by the end of the week, just on scheduling? Do you think you can do it by Thursday, maybe, something like that?

MR. STEPHENS: I think we can, Your Honor.

MR. HADDEN: Yes, Your Honor.

THE COURT: Two or three pages. And if you have any suggestions, I'm open to it. Okay? But that's kind of where I'm at on this.

All right. Anything else about procedural stuff that anybody wants to raise right now before I start talking

substance?

MR. STEPHENS:  No, Your Honor.

MR. HADDEN:  No, Your Honor.

THE COURT:  All right.  Good.  Let's get to work.

Let's start talking about context first.  So, Mr. Stephens, what specifically is the ordinary and customary meaning of "context" to a person of ordinary skill in the art?  Because I'm not seeing it.

You can hand off.  We do hand-offs here.

MR. STEPHENS:  Okay.  Let me hand this off to my colleague, Heng Gong.

THE COURT:  Mr. Gong, come on up.  Do you have the question?

MR. GONG:  Yes.  Yes, I do, Your Honor.

So the plain and ordinary meaning of "context" is the setting or a situation in which an event or user input occurs.

THE COURT:  Okay.  Mr. Hadden, why don't you tell me what the difference is between context and domain.

MR. HADDEN:  Thank you, Your Honor.  So I think they're very closely related.  I think in the patent claim, the context is a valuable -- is a variable, the value of which is determined and used to identify a domain.

And if I could just respond, the ordinary colloquial meaning of "context" is used in some places in this patent, but it cannot be the context in the claim because the claim requires

a thing that the system determines, a context.

THE COURT:  Right.  That's why their proposal is not acceptable.  I'm not sure I'm with you, but I want to float the following.  So I'll let you sit down because you're going to write this down, although you've got a lot of high priced scriveners there anyhow.

But here's what I'm going to float to you as our proposal for "context:"  The subject matter area to which a particular utterance is directed, and which determines the meaning of the utterance.

If you want, you can orally say something, or you can reserve and do something in writing.

MR. HADDEN:  I'll say orally, I think that's fine.

THE COURT:  Okay.  So, Mr. Stephens, you want to say it's great too?

MR. GONG:  So respectfully, Your Honor, we do not agree with that definition, because I think, as we explain in the brief, that the claims and the patent specification use the word "context" consistent with a layperson would use the word "context."

THE COURT:  I don't agree with you.  Your proposal is not acceptable.  I'm going to give a construction here but I'm going to let you file something.  Again, you each have until next Monday.  And I'm going to give you what I'm thinking; it's better for me, though, I get something back so I know that I'm

not going crazy here.  So I'm going to give you until next Monday, but I'm telling you what I'm thinking.  Okay?

MR. GONG:  Understood.

THE COURT:  Why don't you have a seat and let's move on to the next one.  You're going to find out that life with me goes a lot faster than what you normally think.  Okay?

"Context stack."  All right.  Here's our proposal:  A data structure that stores or references context on a last-in, first-out basis.

Mr. Hadden, you thought I was a genius the first time.  Do you still want to agree with me again?

MR. HADDEN:  I agree, Your Honor.

THE COURT:  All right.  Mr. Stephens, do you want to tell me I'm a smart guy or no?  Or Mr. Gong?

MR. STEPHENS:  Mr. Gong will also address this.

THE COURT:  Do you want me to say it again?  A data structure that stores or references context on a last-in, first-out basis.

MR. GONG:  Again, Your Honor, we think the patents do not limit the term that way.

THE COURT:  Okay.  You'll file something.

MR. GONG:  Yeah.

THE COURT:  Okay.  "Entries."  We're going to start with entries in a context stack for the '468 patent:  Elements of a context stack that store or reference context.

You good, Mr. Hadden?

MR. HADDEN:  Yes.  Given your proposed constructions of "context" and "context stack," together that works fine.

THE COURT:  Mr. Gong?  You just want to keep a running objection to everything I say?

MR. GONG:  No.  Actually, this definition is fine with us, except for the construction of "context stack" and "context."

THE COURT:  We're getting there, slowly but surely. All right.

"Context entries" for the '957 patent:  Entries in a context stack that store or reference context.

Mr. Hadden, still loving me?

MR. HADDEN:  That's fine, Your Honor.

THE COURT:  Okay.  Mr. Gong, I'm starting to feel some love for you.  Come on.

MR. GONG:  It's the same as last one.  We're fine with it except for the context stack.

THE COURT:  That's fine.  I got it.  All right.

Let's talk about "grammar" here for a second.  Let me just ask you this, Mr. Hadden.  I'm starting with you because you seem to like my things.

MR. HADDEN:  Yes, Your Honor.

THE COURT:  Is "context description grammar" a term of art that should be given its own construction, and, if not, what

does that term mean?

MR. HADDEN:  So it is not a term of art.  I think "grammar" is a term of art in natural language, understanding and spoken language processing, and we cited the treatise.

The context description grammar, the way I understand it from the claims, is a grammar, as that term is used in the art, with the specific purpose of identifying a context based on words and whatever structure is provided by that grammar.

THE COURT:  Okay.  Mr. Gong or Mr. Stephens?

MR. STEPHENS:  It will be Mr. Koehl for this turn, Your Honor.

THE COURT:  Okay.

MR. KOEHL:  The question is, is a "context description grammar" a term of art.

THE COURT:  I'll read it to you again, because you're helping me figure this out.

Is "context description grammar" a term of art that should be given its own construction, and, if not, what does that term mean?

MR. KOEHL:  Context description grammar, we think, is explained pretty clearly in the claims.  For example, Claim 13 of the '039 patent talks about comparing text combinations to entries in a context description grammar associating domain agents and so forth, and generating a relevance score based on the context description grammar.

Grammar as a whole, we think of as the rules of grammar help us decide the order we put words in and which forms of a word to use. So the context description grammar, as we see it, is a grammar that is associated with the context description that is linked to the claim -- linked in the claim.

THE COURT: How about this. So I'm going to divide up, for the '720, the '006, and the -- yeah, the '720 and '006 patent, a set of rules governing how inputs and requests to a domain agent should be structured.

I'll say it again. A set of rules governing how inputs and requests to a domain agent should be structured. I guess that applies to the '039, too. I look at a separate set of '039 with context description grammar.

Do you like that or not?

MR. KOEHL: Is this for grammar generally, Your Honor?

THE COURT: Yes, grammar generally.

MR. KOEHL: I think we would have to think about that a little bit. There is a lot to like in it, Your Honor, but I think we would prefer to reserve our thoughts on that.

THE COURT: That's why I'm giving you a week.

MR. KOEHL: Thank you, Your Honor.

THE COURT: Mr. Hadden, you keep telling me I'm a genius. Am I still smart?

MR. HADDEN: Yeah, I think this one works, Your Honor.

THE COURT: Okay, good.

Let's go to, then, for the '739 patent, "context description grammar."  We're going to give that a definition.  I don't think I'm the one that gave us this proposal.  But a data structure containing entries constituting or referencing sets of rules, wherein each of those sets describes the structure of natural language in a particular context.

So I'll read it to you one more time.  Okay?  A data structure containing entries constituting or referencing sets of rules, wherein each of those sets describes a structure of natural language in a particular context.

What do you think, Mr. Hadden?

MR. HADDEN:  I like it, Your Honor.

THE COURT:  Okay.  All right.  Mr. Koehl, you want to reserve or what do you want to do?

MR. KOEHL:  Yes, Your Honor.  It is quite a lot to think about, Your Honor.

THE COURT:  Yeah, that's totally fair.

MR. KOEHL:  Thank you, Your Honor.

THE COURT:  I mean, I'm totally ambushing you here, but it's more constructive if I tell you what I'm thinking.  You know, I've already read everything you gave me, so what you would normally argue is just repeating what you -- and your briefing is fantastic, both sides.  I want you to know that.  I also thought your expert affidavits were fantastic, too.

So instead of you just repeating stuff, I just thought

I would tell you what I'm thinking and you can tell me why I'm crazy. Okay? And you won't be the first to tell me I'm crazy. Mr. Angle can tell you.

All right. Let's get to "domain agent." Okay? For the '720 and the '006 patent, executables associated with a specific domain that receive, process, and respond to user questions, queries, and commands.

I'm going to say it again. Okay? Executables associated with a specific domain that receive, process, and respond to user questions, queries, and commands.

Mr. Hadden?

MR. HADDEN: I love it.

THE COURT: Okay. Mr. Koehl? Why don't we do this: You either say you love it like he does or you say you want to reserve and you'll tell me why.

MR. KOEHL: Unfortunately, Your Honor, I have to say I reserve it.

THE COURT: It's okay. You're doing your job.

All right. For the '468 patent, software with domain-specific behavior and information. Software with domain-specific behavior and information.

Mr. Hadden?

MR. HADDEN: I'm sorry, Your Honor, I just got a little confused. So this is "domain agent," the same term, and a different patent?

THE COURT:  The '468.  We're breaking it down.  The first one was for the first two patents.

MR. HADDEN:  I have to think about this, because I think they should be construed the same.

THE COURT:  That's fair.  Okay.

MR. HADDEN:  But I like your first one better.

THE COURT:  You can make that point.

Okay.  Go ahead, Mr. Koehl.

MR. KOEHL:  We love it, Your Honor.

THE COURT:  Of course you do.  I can see how this is going to roll.

For the '039 patent, software that provides packages or modules to extend or modify the functionality of the system in a specific domain.  Want me to say it again?  Software that provides packages or modules to extend or modify the functionality of the system in a specific domain.

Mr. Hadden?

MR. HADDEN:  Again, my only issue is whether they should all be the same, like the '720 batch.

THE COURT:  That's fine.

MR. HADDEN:  So I need to look back at the claim and confirm that one way or the other.

THE COURT:  That's totally fine.  Mr. Koehl?

MR. KOEHL:  Again, Your Honor, we would have to think about this one.

THE COURT:  Okay.  I want to ask you each, though, a general question here about this, though, too.  How should the '468 and the '039 patent's definition of "data manager," to mean autonomous executables that receive, process, and respond to user questions, queries, and commands, affect this court's construction of the term "domain agent" as used in those patents?

Does anybody want to respond to that?  I'll start with Amazon.

MR. HADDEN:  Yeah, I'm sorry, Your Honor, I just didn't catch the beginning.

THE COURT:  Let me read it again.  I mean, we're obviously trying to figure it out.

How should the '468 and the '039 patent's definition of "data manager," to mean autonomous executables that receive, process, and respond to user questions, queries, and commands, affect this court's construction of the term "domain agent," which we just spoke of, as used in those patents?

And I would say this.  If you don't want to answer now and you want to reserve that for the supplemental filing, that's okay with me too.  I'm more focused on you telling me --

MR. HADDEN:  Okay.  I think I understand now what's going on, Your Honor.

So my understanding of the data manager is that it is the thing that kind of parcels out the packages that include the

domain agents.  So I think kind of the bulk of the description here is really about what the domain agents are; they are the packages that have the domain-specific behavior and respond to user requests.  I think the data manager is here kind of just infrastructure that controls those and parcels them out.

THE COURT:  So depending on what definition I use for "domain agent," as we just spoke of, that might affect what you're thinking.  Right?

MR. HADDEN:  Exactly.

THE COURT:  So why don't you answer that question when you tell me what your thoughts are about the three that I propose.  Does that sound fair to you?

MR. HADDEN:  We'll do, Your Honor.

THE COURT:  Mr. Koehl, you just want to do the same thing?

MR. KOEHL:  Yes, Your Honor.

THE COURT:  All right.  "Procedure sensitive in the determined context."  Here's our proposal at this time.  Now, remember, by the way, summary judgment might affect this, too, down the road, so that's why I'm taking this in steps.  I want to kind of see what we're doing.

But our proposal is:  Procedures that differ based on which context has been determined.  That's more similar to Dialect's, I think, what they propose.

I know you have your indefinite argument, Mr. Hadden,

but you'll have that for another day.

MR. HADDEN:  Sure.  So modular, the definiteness argument in our position, in that realm we would take this as a rewrite of the claim.  And so it doesn't -- it's kind of not a proper way to solve it.

THE COURT:  That's fine.

MR. HADDEN:  But if we don't get over that hurdle, I think this is a fine construction, Your Honor.

THE COURT:  And remember, you're preserving for summary judgment.  That's kind of what I'm doing here.

MR. HADDEN:  I understand what you're proposing, Your Honor.

MR. STEPHENS:  Your Honor, Mr. Constant will address this one.

THE COURT:  Mr. Constant, good morning.

MR. CONSTANT:  Your Honor, we would have to think about it, but I think largely we could agree with that construction.

THE COURT:  Okay.  Just tell me what you think about it.

All right.  Let's get to "parser" here.  Let me ask a general question.  How should I construe "parser" if I find that Section 112, Paragraph 6 does not apply, Mr. Hadden?  I'm not saying I made that decision yes.

MR. HADDEN:  I understand.  That's where we have a problem.  Right?  And the problem is, "parsing" has a meaning,

as Dr. Johnson explained, in this field, but the parser in the claim does a whole bunch of other junk that would not be known as parsing.  So it's kind of putting a square peg in a round hole, if we're going to construe "parser" to do all of those things.

THE COURT:  Here's what I want to do.  I'm very much about jury instructions and I don't like to have things flying around here without some kind of definition.  You're preserving your arguments because I'm going to look at them in the context of summary judgment.

MR. HADDEN:  Okay.

THE COURT:  So we're just playing here the, presume I rule against you, not interpreting anything from it.

MR. HADDEN:  Understood.

THE COURT:  I'm not making a ruling, I'm just doing it on the fly.

Software that analyzes a string of words, which I think was Dialect's alternative argument to me.  I don't like using the plain and ordinary meaning.  I think it's too difficult for jurors here, and I want to give them as much direction as I can.  So do you have any thoughts on that, again, preserving?

MR. HADDEN:  Yeah, I don't have a strong feeling because I think if 112 doesn't apply, this is kind of a black box.  Clearly it 's software and the functions it performs are kind of laid out in the claim, so the meat of the construction

doesn't really add much in that sense.  So it's probably okay.

THE COURT:  So it's all about your basic --

MR. HADDEN:  Yeah, right.

THE COURT:  Mr. Hadden or Mr. Constant, I gather you're fine with that since you proposed that as an alternative.  Is that right?

MR. CONSTANT:  That's right.

THE COURT:  It seems to me I've gone through everything in the list.  I say that's a half an hour instead of two hours.

But, Mr. Hadden, on behalf of your team, is there anything else you want to tell me?  Do you have anything on behalf of your team you want to tell me?

MR. HADDEN:  No.  It's been very helpful, Your Honor. Appreciate it.

THE COURT:  Mr. Stephens, anything else on behalf of your team?

MR. STEPHENS:  Yes, Your Honor, just one thing.  I will confess I had trouble writing down all of your proposals, so I was hoping we could have a week after we get the transcript of today's hearing to respond.

THE COURT:  What if we do this instead:  I'll enter a separate order telling you you've got a week to respond with our proposals.  Does that sound fair?

MR. STEPHENS:  That's perfect, Your Honor.  Yes.

THE COURT:  But I do expect you both to order the

27

transcript, so get with the court reporter -- I think it would be helpful to everybody.  So why don't you do that today, and if you want it quickly, you let her know.

MR. STEPHENS:  We'll do that.

THE COURT:  In our order we'll list the proposals and then we'll kind of go from there.

MR. STEPHENS:  That's great.  Thank you, Your Honor.

THE COURT:  I think what I'll do too, I'll do my proposed scheduling order as well, and give you -- let's go back -- you know what, you give me your responses next Monday as well.  Okay.  So everything is next Monday.  So Monday, you've got 10 pages on the responses to my proposals, and then you'll have three pages to -- you're not going to need that, but three pages to say, hey, why don't you tweak the scheduling order in this way for this reason.  It's about functionality.

And I need you to think about the following, though, when you do this:  I can't be ruling on stuff in March because I'm going to be tied up on this national security case.  So I have windows in my head when I'm going to do the work on your case; it's either going to be before March or it's going to be in April.  The April stuff I would like to be just the little nonsense, like witness lists, exhibit lists.

You've got something substantive where I need to get some work done, we need to be looking at January.  And particularly the jury instructions, because I want to do some

work on that.  Of course, I'm really expecting you to settle the case with Judge Vaala before July 31st and all of our lives will be a lot better off.

MR. HADDEN:  Understood, Your Honor.  Thank you very much.

THE COURT:  Appreciate all the work you-all have done. You did really good work.  It was very helpful to me in a difficult area.

MR. STEPHENS:  Thank you, Your Honor.

MR. CONSTANT:  Thank you, Your Honor.

(Off the record at 11:05 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, Rebecca Stonestreet, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

**___//Rebecca Stonestreet//___            _____**

**SIGNATURE OF COURT REPORTER                        DATE**

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*

| ' | 4 | | |
|---|---|---|---|
| **'006** [3] - 18:7, 20:5 | **401** [1] - 2:10 | **alternative** [2] - 25:18, 26:5 | **beginning** [1] - 22:11 |
| **'039** [6] - 17:22, 18:12, 21:12, 22:3, 22:14 | **426-7767** [1] - 2:11 | **Amazon** [2] - 8:1, 22:9 | **behalf** [4] - 3:7, 26:10, 26:12, 26:15 |
| **'468** [5] - 15:24, 20:19, 21:1, 22:3, 22:14 | **4th** [2] - 9:10, 9:16 | **AMAZON.COM** [1] - 1:5 | **behavior** [3] - 20:20, 20:21, 23:3 |

**'006** [3] - 18:7, 20:5
**'039** [6] - 17:22, 18:12, 21:12, 22:3, 22:14
**'468** [5] - 15:24, 20:19, 21:1, 22:3, 22:14
**'720** [4] - 18:7, 20:5, 21:19
**'739** [1] - 19:1
**'957** [1] - 16:11

**/**

**//Rebecca** [1] - 28:24

**1**

**1** [1] - 2:13
**10** [5] - 7:13, 8:7, 10:24, 11:12, 27:12
**1001** [1] - 2:6
**10010** [1] - 2:3
**101** [1] - 8:15
**10583** [2] - 1:17
**10:30** [1] - 1:6
**112** [2] - 24:22, 25:23
**11:05** [1] - 28:11
**12th** [1] - 11:10
**13** [1] - 17:21
**14** [1] - 9:7
**1500** [1] - 2:7
**18** [1] - 2:2
**1:23-cv-00581-DJN-LRV** [1] - 1:3
**1:23-CV-581** [1] - 3:2

**2**

**2024** [1] - 1:5
**20th** [1] - 9:5
**21** [1] - 1:16
**212-430-2600** [1] - 2:3
**22314** [1] - 2:11
**23219** [1] - 2:7
**23rd** [1] - 11:10
**240** [1] - 2:11
**24th** [1] - 7:24
**25th** [1] - 9:19
**281-372-3036** [2] - 1:14, 1:17
**28th** [2] - 10:20, 10:24
**29th** [1] - 11:11

**3**

**3139** [1] - 1:13
**31st** [3] - 9:21, 10:2, 28:2
**3rd** [2] - 7:25, 8:11

**4**

**401** [1] - 2:10
**426-7767** [1] - 2:11
**4th** [2] - 9:10, 9:16

**6**

**6** [2] - 9:7, 24:22
**650-351-7248** [1] - 1:20
**650-988-8500** [1] - 1:24

**7**

**701** [1] - 1:19
**77025** [1] - 1:14

**8**

**8** [1] - 1:5
**801** [1] - 1:23
**804-697-1200** [1] - 2:8
**8160** [1] - 1:13
**8th** [1] - 9:19

**9**

**902** [1] - 2:2
**94041** [1] - 1:24
**94063** [1] - 1:20
**9th** [2] - 2:10, 11:9

**A**

**a.m** [4] - 1:6, 10:24, 11:12, 28:11
**above-entitled** [1] - 28:20
**acceptable** [2] - 14:3, 14:22
**action** [1] - 3:2
**add** [1] - 26:1
**address** [2] - 15:15, 24:13
**affect** [4] - 22:5, 22:17, 23:7, 23:19
**affidavits** [1] - 19:24
**agent** [7] - 18:9, 18:11, 20:4, 20:24, 22:6, 22:17, 23:7
**agents** [3] - 17:24, 23:1, 23:2
**agree** [5] - 14:16, 14:21, 15:11, 15:12, 24:17
**ahead** [1] - 21:8
**al** [2] - 1:5, 3:3
**Alexandria** [3] - 1:2, 2:11, 10:21
**Alice** [1] - 8:9
**allow** [1] - 4:14

**alternative** [2] - 25:18, 26:5
**Amazon** [2] - 8:1, 22:9
**AMAZON.COM** [1] - 1:5
**Amazon.com** [1] - 3:3
**ambushing** [1] - 19:19
**analyzes** [1] - 25:17
**Angle** [4] - 5:10, 6:12, 20:3
**ANGLE** [7] - 2:4, 5:13, 5:20, 5:24, 6:4, 6:6, 6:11
**ANNE** [1] - 2:5
**answer** [6] - 4:13, 5:5, 7:19, 8:3, 22:19, 23:10
**answers** [1] - 5:15
**anyhow** [2] - 4:2, 14:6
**APPEARANCES** [2] - 1:10, 1:25
**applies** [1] - 18:12
**apply** [2] - 24:22, 25:23
**appreciate** [3] - 5:13, 26:14, 28:6
**April** [4] - 1:5, 11:11, 27:21
**area** [2] - 14:8, 28:8
**argue** [1] - 19:22
**arguing** [1] - 3:25
**argument** [8] - 4:3, 4:23, 5:25, 9:12, 9:16, 23:25, 24:3, 25:18
**arguments** [1] - 25:9
**ARMISTEAD** [1] - 2:4
**art** [7] - 13:7, 16:25, 17:2, 17:3, 17:7, 17:14, 17:17
**associated** [3] - 18:4, 20:5, 20:9
**associates** [1] - 12:3
**associating** [1] - 17:23
**attack** [1] - 6:24
**attempt** [1] - 4:14
**autonomous** [2] - 22:4, 22:15

**B**

**balance** [1] - 12:12
**based** [3] - 17:7, 17:24, 23:22
**basic** [1] - 26:2
**basis** [2] - 15:9, 15:18
**batch** [1] - 21:19
**become** [1] - 6:16
**BEFORE** [1] - 1:8

**beginning** [1] - 22:11
**behalf** [4] - 3:7, 26:10, 26:12, 26:15
**behavior** [3] - 20:20, 20:21, 23:3
**believer** [1] - 6:13
**best** [1] - 6:24
**better** [4] - 6:24, 14:25, 21:6, 28:3
**between** [2] - 12:13, 13:18
**bifurcate** [1] - 8:3
**big** [1] - 7:11
**bigger** [1] - 6:18
**billing** [1] - 5:2
**bit** [9] - 4:4, 5:3, 6:14, 7:1, 7:4, 9:6, 10:5, 10:11, 18:18
**black** [1] - 25:23
**blind** [1] - 7:15
**blind-side** [1] - 7:15
**BLUE** [2] - 1:12, 1:16
**Blue** [1] - 3:8
**Blvd** [1] - 1:13
**bounce** [1] - 9:14
**box** [1] - 25:24
**breaking** [1] - 21:1
**brief** [1] - 14:18
**briefing** [4] - 8:4, 8:5, 9:3, 19:23
**Broadway** [1] - 2:2
**brought** [1] - 5:11
**bulk** [1] - 23:1
**bunch** [1] - 25:2
**Bunsow** [1] - 3:7
**BUNSOW** [1] - 1:19

**C**

**CA** [2] - 1:20, 1:24
**calendar** [1] - 11:17
**California** [1] - 1:23
**Camino** [1] - 1:19
**cancelling** [1] - 9:18
**cannot** [1] - 13:25
**case** [12] - 6:20, 7:11, 10:6, 10:14, 11:1, 11:3, 11:8, 11:9, 12:11, 27:18, 27:20, 28:2
**Case** [1] - 1:3
**catch** [1] - 22:11
**Center** [1] - 1:23
**CERTIFICATE** [1] - 28:16
**certify** [1] - 28:18
**chambers** [1] - 9:25
**chance** [2] - 4:17, 7:10
**change** [2] - 5:22, 7:3
**check** [1] - 11:16

**Christmas** [1] - 12:2
**cited** [1] - 17:4
**cities** [1] - 10:16
**City** [1] - 1:20
**Civil** [1] - 1:3
**civil** [1] - 3:2
**claim** [10] - 5:14, 13:20, 13:25, 18:5, 21:21, 24:4, 25:2, 25:25
**Claim** [1] - 17:21
**claims** [5] - 6:22, 7:5, 14:18, 17:6, 17:21
**clear** [1] - 6:16
**clearly** [2] - 17:21, 25:24
**CLERK** [1] - 3:2
**clerks** [1] - 4:18
**client** [1] - 3:5
**clients** [1] - 5:2
**closely** [1] - 13:20
**closing** [1] - 7:24
**co** [1] - 5:15
**co-counsel** [1] - 5:15
**colleague** [2] - 6:21, 13:11
**colleagues** [2] - 3:25, 4:14
**college** [1] - 10:11
**colloquial** [1] - 13:23
**combinations** [1] - 17:22
**coming** [1] - 9:22
**commands** [4] - 20:7, 20:10, 22:5, 22:16
**comparing** [1] - 17:22
**completely** [1] - 4:2
**COMPUTERIZED** [1] - 2:14
**conference** [3] - 9:18, 9:20, 11:11
**confess** [1] - 26:18
**confirm** [1] - 21:22
**confused** [1] - 20:24
**consider** [1] - 8:15
**consistent** [1] - 14:19
**Constant** [2] - 3:15, 26:4
**CONSTANT** [4] - 1:12, 24:16, 26:7, 28:10
**constant** [2] - 24:13, 24:15
**constituting** [2] - 19:4, 19:8
**construction** [10] - 7:7, 14:22, 16:7, 16:25, 17:18, 22:6, 22:17, 24:8, 24:17, 25:25

**constructions** [2] - 7:13, 16:2
**constructive** [1] - 19:20
**construe** [2] - 24:21, 25:4
**construed** [1] - 21:4
**contact** [1] - 9:25
**containing** [2] - 19:4, 19:8
**context** [42] - 13:5, 13:7, 13:15, 13:18, 13:20, 13:24, 13:25, 14:1, 14:8, 14:19, 14:20, 15:7, 15:8, 15:17, 15:24, 15:25, 16:3, 16:7, 16:8, 16:11, 16:12, 16:18, 16:24, 17:5, 17:7, 17:13, 17:17, 17:20, 17:23, 17:25, 18:3, 18:4, 18:13, 19:1, 19:6, 19:10, 23:18, 23:23, 25:9
**CONTINUED** [1] - 1:25
**continuing** [1] - 8:15
**controls** [1] - 23:5
**correct** [1] - 28:19
**counsel** [2] - 3:24, 5:15
**couple** [2] - 7:6, 8:6
**course** [4] - 5:8, 5:16, 21:10, 28:1
**Court** [1] - 2:10
**COURT** [85] - 1:1, 2:9, 3:11, 3:14, 3:16, 3:20, 3:22, 4:1, 4:6, 4:10, 4:16, 5:9, 5:19, 5:22, 6:1, 6:3, 6:5, 6:10, 6:12, 7:23, 8:14, 8:17, 8:24, 11:15, 11:19, 12:21, 13:4, 13:12, 13:17, 14:2, 14:14, 14:21, 15:4, 15:13, 15:16, 15:21, 15:23, 16:4, 16:9, 16:15, 16:19, 16:24, 17:9, 17:12, 17:15, 18:6, 18:16, 18:20, 18:22, 18:25, 19:13, 19:17, 19:19, 20:13, 20:18, 21:1, 21:5, 21:7, 21:10, 21:20, 21:23, 22:1, 22:12, 23:6, 23:10, 23:14, 23:17, 24:6, 24:9, 24:15, 24:18, 25:6, 25:12, 25:15, 26:2, 26:4, 26:8, 26:15, 26:21, 26:25,

27:5, 27:8, 28:6, 28:16, 28:25
**court** [1] - 27:1
**court's** [2] - 22:5, 22:17
**Courthouse** [1] - 2:10
**COURTROOM** [1] - 3:2
**cover** [1] - 6:7
**crazy** [3] - 15:1, 20:2
**critical** [1] - 12:8
**CRR** [1] - 2:9
**current** [1] - 8:10
**customary** [1] - 13:6

**D**

**data** [8] - 15:8, 15:16, 19:3, 19:7, 22:3, 22:15, 22:24, 23:4
**date** [2] - 9:11, 10:8
**DATE** [1] - 28:25
**Daubert** [1] - 9:11
**Dave** [3] - 5:17, 5:18, 5:21
**DAVID** [2] - 1:8, 1:21
**days** [1] - 8:7
**De** [1] - 3:7
**DE** [1] - 1:19
**deadlines** [1] - 11:23
**deal** [2] - 7:11, 9:7
**decide** [2] - 9:15, 18:2
**decision** [1] - 24:23
**DEFENDANTS** [2] - 1:21, 2:1
**Defendants** [1] - 1:6
**defense** [1] - 5:9
**deferred** [1] - 6:21
**definitely** [1] - 6:25
**definiteness** [1] - 24:2
**definition** [7] - 14:17, 16:6, 19:2, 22:3, 22:14, 23:6, 25:8
**describes** [2] - 19:5, 19:9
**description** [12] - 16:24, 17:5, 17:13, 17:17, 17:20, 17:23, 17:25, 18:3, 18:4, 18:13, 19:2, 23:1
**determined** [3] - 13:21, 23:18, 23:23
**determines** [2] - 14:1, 14:9
**Dialect** [2] - 3:3, 3:8
**DIALECT** [1] - 1:3
**Dialect's** [2] - 23:24, 25:18
**differ** [1] - 23:22
**difference** [1] - 13:18

**different** [5] - 4:4, 5:3, 7:8, 10:16, 20:25
**difficult** [2] - 25:19, 28:8
**digest** [3] - 8:19, 11:7, 12:16
**directed** [1] - 14:9
**direction** [1] - 25:20
**discovery** [1] - 7:24
**dismiss** [1] - 6:22
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [1] - 2:10
**divide** [1] - 18:6
**divided** [1] - 6:6
**Division** [1] - 1:2
**docket** [1] - 6:13
**dockets** [1] - 10:16
**domain** [19] - 13:18, 13:22, 17:23, 18:9, 18:11, 20:4, 20:6, 20:9, 20:20, 20:21, 20:24, 21:14, 21:16, 22:6, 22:17, 23:1, 23:2, 23:3, 23:7
**domain-specific** [3] - 20:20, 20:21, 23:3
**done** [6] - 9:25, 10:12, 12:5, 12:6, 27:24, 28:6
**DONNA** [1] - 1:22
**Donna** [1] - 6:4
**down** [6] - 9:7, 14:4, 14:5, 21:1, 23:20, 26:18
**Dr** [1] - 25:1
**draft** [1] - 8:24
**duck** [1] - 4:4
**due** [1] - 7:25

**E**

**earliest** [1] - 9:4
**EASTERN** [1] - 1:1
**easy** [1] - 10:17
**either** [2] - 20:14, 27:20
**El** [1] - 1:19
**elements** [1] - 15:24
**Ellis** [1] - 6:21
**Ellis'** [1] - 8:16
**end** [2] - 10:13, 12:17
**enter** [1] - 26:21
**entitled** [1] - 28:20
**entries** [7] - 15:23, 15:24, 16:11, 17:23, 19:4, 19:8
**et** [2] - 1:5, 3:3
**event** [1] - 13:16
**evidence** [2] - 10:19,

11:10
**exactly** [1] - 23:9
**example** [1] - 17:21
**exceeding** [1] - 7:12
**except** [2] - 16:7, 16:18
**executables** [4] - 20:5, 20:8, 22:4, 22:15
**exhibit** [1] - 27:22
**expect** [1] - 26:25
**expecting** [2] - 10:11, 28:1
**expert** [1] - 19:24
**explain** [1] - 14:17
**explained** [2] - 17:21, 25:1
**extend** [2] - 21:13, 21:15
**extra** [2] - 8:2, 8:20

**F**

**fair** [4] - 19:17, 21:5, 23:12, 26:23
**fantastic** [2] - 19:23, 19:24
**far** [1] - 8:12
**faster** [1] - 15:6
**FENWICK** [2] - 1:22, 2:1
**Fenwick** [1] - 5:17
**field** [1] - 25:1
**figure** [3] - 4:19, 17:16, 22:13
**figured** [1] - 5:24
**file** [3] - 8:8, 14:23, 15:21
**filing** [3] - 7:12, 8:20, 22:20
**final** [2] - 9:18, 11:11
**fine** [11] - 14:13, 16:3, 16:6, 16:14, 16:17, 16:19, 21:20, 21:23, 24:6, 24:8, 26:5
**firm** [3] - 3:7, 3:8, 11:17
**first** [10] - 7:3, 8:4, 13:5, 15:9, 15:10, 15:18, 20:2, 21:2, 21:6
**first-out** [2] - 15:9, 15:18
**flexible** [1] - 8:18
**float** [3] - 7:8, 14:3, 14:7
**Floor** [1] - 2:10
**fly** [1] - 25:16
**flying** [1] - 25:7
**focused** [1] - 22:21

**folks** [1] - 10:22
**following** [2] - 14:4, 27:16
**FOR** [4] - 1:1, 1:11, 1:21, 2:1
**foregoing** [1] - 28:18
**forms** [1] - 18:2
**forth** [1] - 17:24
**front** [2] - 4:3, 9:20
**fully** [1] - 4:12
**functionality** [3] - 21:13, 21:16, 27:15
**functioning** [1] - 11:4
**functions** [1] - 25:24

**G**

**GARLAND** [1] - 1:11
**Garland** [1] - 3:9
**gather** [1] - 26:4
**general** [3] - 10:6, 22:2, 24:21
**generally** [3] - 9:12, 18:15, 18:16
**generating** [1] - 17:24
**genius** [2] - 15:10, 18:23
**Geoff** [1] - 6:6
**GEOFFREY** [1] - 2:1
**given** [4] - 6:17, 16:2, 16:25, 17:18
**God** [1] - 5:10
**gold** [1] - 10:9
**Gong** [8] - 3:12, 13:11, 13:12, 15:14, 15:15, 16:4, 16:15, 17:9
**GONG** [9] - 1:15, 3:13, 13:14, 14:16, 15:3, 15:19, 15:22, 16:6, 16:17
**governing** [2] - 18:8, 18:10
**grammar** [19] - 16:20, 16:24, 17:3, 17:5, 17:6, 17:8, 17:14, 17:17, 17:20, 17:23, 17:25, 18:1, 18:3, 18:4, 18:13, 18:15, 18:16, 19:2
**great** [2] - 14:15, 27:7
**GROUP** [2] - 1:12, 1:16
**guess** [2] - 9:23, 18:11
**guy** [1] - 15:14

**H**

**Hadden** [20] - 5:18, 5:20, 5:21, 6:1, 11:15, 13:17, 15:10, 16:1, 16:13, 16:21,

18:22, 19:11, 20:11, 20:22, 21:17, 23:25, 24:22, 26:4, 26:10
**HADDEN** [41] - 1:21, 5:18, 5:21, 6:2, 6:8, 7:20, 8:13, 8:15, 8:23, 11:16, 12:20, 13:3, 13:19, 14:13, 15:12, 16:2, 16:14, 16:23, 17:2, 18:24, 19:12, 20:12, 20:23, 21:3, 21:6, 21:18, 21:21, 22:10, 22:22, 23:9, 23:13, 24:2, 24:7, 24:11, 24:24, 25:11, 25:14, 25:22, 26:3, 26:13, 28:4
**half** [1] - 26:9
**HAMILTON** [1] - 2:5
**hand** [3] - 13:9, 13:10
**hand-offs** [1] - 13:9
**handle** [2] - 4:20, 10:5
**hard** [1] - 10:17
**Haxall** [1] - 2:6
**head** [1] - 27:19
**heard** [2] - 4:18, 6:14
**hearing** [6] - 9:11, 10:20, 10:25, 11:20, 12:9, 26:20
**HEARING** [1] - 1:8
**help** [4] - 5:24, 7:21, 10:18, 18:2
**helpful** [5] - 9:13, 9:16, 26:13, 27:2, 28:7
**helping** [1] - 17:16
**helps** [1] - 10:15
**Heng** [2] - 3:12, 13:11
**HENG** [1] - 1:15
**high** [1] - 14:5
**hitting** [1] - 5:1
**Holcombe** [1] - 1:13
**hole** [1] - 25:4
**holiday** [1] - 12:6
**holidays** [1] - 12:4
**Honor** [53] - 3:6, 3:10, 3:13, 3:24, 4:9, 4:12, 5:8, 5:21, 6:2, 6:9, 6:11, 7:20, 7:22, 11:14, 12:19, 12:20, 13:2, 13:3, 13:14, 13:19, 14:16, 15:12, 15:19, 16:14, 16:23, 17:11, 18:15, 18:18, 18:21, 18:24, 19:12, 19:15, 19:16, 19:18, 20:16, 20:23, 21:9, 21:24, 22:10, 22:23, 23:13, 23:16, 24:8, 24:12, 24:13, 24:16,

26:13, 26:17, 26:24, 27:7, 28:4, 28:9, 28:10
**HONORABLE** [1] - 1:8
**hope** [2] - 4:13, 7:18
**hopefully** [1] - 8:6
**hoping** [1] - 26:19
**hour** [1] - 26:9
**hours** [2] - 10:18, 26:9
**Houston** [1] - 1:14
**hurdle** [1] - 24:7

## I

**ideas** [1] - 7:8
**identify** [1] - 13:22
**identifying** [1] - 17:7
**Inc** [1] - 3:3
**INC** [1] - 1:5
**include** [1] - 22:25
**including** [1] - 8:8
**indefinite** [1] - 23:25
**indicated** [1] - 10:1
**indulge** [1] - 4:14
**Informal** [1] - 4:16
**information** [2] - 20:20, 20:21
**infrastructure** [1] - 23:5
**input** [1] - 13:16
**inputs** [2] - 18:8, 18:10
**instead** [6] - 9:10, 9:17, 10:19, 19:25, 26:9, 26:21
**instructions** [4] - 11:24, 12:7, 25:7, 27:25
**interpreting** [1] - 25:13
**intimated** [1] - 8:2
**introduce** [2] - 3:4, 5:14
**issue** [2] - 8:7, 21:18
**issues** [4] - 8:5, 8:8, 8:9, 8:11

## J

**January** [3] - 12:3, 12:6, 27:24
**job** [5] - 5:5, 6:25, 8:25, 11:7, 20:18
**JOE** [1] - 1:21
**Johnson** [1] - 25:1
**JUDGE** [1] - 1:9
**Judge** [6] - 5:13, 6:21, 8:16, 9:21, 9:25, 28:2
**judgment** [15] - 6:17, 7:25, 8:4, 8:5, 8:8,

8:11, 9:4, 9:12, 9:13, 9:15, 10:4, 11:2, 23:19, 24:10, 25:10
**July** [8] - 7:25, 8:11, 9:5, 9:21, 10:2, 10:8, 10:14, 28:2
**June** [2] - 7:24, 10:3
**junk** [1] - 25:2
**jurors** [1] - 25:20
**jury** [6] - 9:19, 11:9, 11:24, 12:7, 25:7, 27:25
**Justin** [1] - 3:15
**JUSTIN** [1] - 1:12

## K

**keep** [4] - 8:10, 9:10, 16:4, 18:22
**Kensington** [1] - 1:16
**kind** [18] - 4:7, 4:20, 4:21, 10:5, 11:6, 12:14, 12:22, 22:25, 23:1, 23:4, 23:21, 24:4, 24:10, 25:3, 25:8, 25:23, 25:25, 27:6
**known** [1] - 25:2
**KOEHL** [12] - 1:11, 17:13, 17:20, 18:15, 18:17, 18:21, 19:15, 19:18, 20:16, 21:9, 21:24, 23:16
**Koehl** [7] - 3:15, 17:10, 19:13, 20:13, 21:8, 21:23, 23:14
**KUYKENDALL** [1] - 2:5
**Kuykendall** [1] - 5:16

## L

**L.A** [1] - 5:16
**laid** [1] - 25:25
**language** [4] - 17:3, 17:4, 19:6, 19:10
**largely** [1] - 24:17
**last** [4] - 5:19, 15:8, 15:17, 16:17
**last-in** [2] - 15:8, 15:17
**LAURA** [1] - 2:5
**law** [4] - 3:7, 3:8, 4:18, 7:7
**LAW** [2] - 1:12, 1:16
**laxative** [1] - 10:6
**layperson** [1] - 14:19
**lead** [2] - 3:22, 3:24
**least** [2] - 9:5, 11:2
**life** [1] - 15:5
**limit** [1] - 15:20

**line** [1] - 12:8
**linked** [2] - 18:5
**list** [2] - 26:9, 27:5
**lists** [2] - 27:22
**live** [1] - 11:15
**lives** [1] - 28:2
**LLC** [3] - 1:3, 3:3, 3:8
**LLP** [6] - 1:12, 1:16, 1:19, 1:22, 2:1, 2:6
**LONG** [1] - 1:22
**look** [9] - 4:16, 7:16, 8:18, 10:8, 11:25, 12:7, 18:12, 21:21, 25:9
**looked** [2] - 6:16, 6:23
**looking** [1] - 27:24
**love** [4] - 16:16, 20:12, 20:14, 21:9
**loving** [1] - 16:13
**LYNN** [1] - 1:18

## M

**manager** [4] - 22:3, 22:15, 22:24, 23:4
**map** [1] - 10:11
**March** [3] - 12:12, 27:17, 27:20
**Markman** [8] - 8:5, 8:7, 8:8, 8:11, 8:16, 8:17, 9:24
**MARKMAN** [1] - 1:8
**Markman-related** [1] - 8:8
**matter** [2] - 14:8, 28:20
**mean** [7] - 7:20, 17:1, 17:19, 19:19, 22:3, 22:12, 22:15
**meaning** [6] - 13:7, 13:15, 13:24, 14:10, 24:25, 25:19
**means** [1] - 12:3
**meat** [1] - 25:25
**might** [4] - 5:2, 11:20, 23:7, 23:19
**MILLER** [1] - 2:1
**Miller** [1] - 6:6
**modify** [2] - 21:13, 21:15
**modular** [1] - 24:2
**modules** [2] - 21:13, 21:15
**Monday** [5] - 14:24, 15:2, 27:10, 27:11
**money** [1] - 5:2
**morning** [8] - 3:6, 3:10, 3:11, 3:13, 3:14, 3:16, 6:5, 24:15

**MORY** [1] - 1:19
**Mory** [1] - 3:7
**most** [1] - 3:25
**motion** [1] - 6:22
**motions** [1] - 9:4
**Mountain** [1] - 1:24
**move** [3] - 6:15, 11:23, 15:4
**moving** [2] - 10:21, 11:8
**MR** [87] - 3:10, 3:13, 3:24, 4:5, 4:9, 4:12, 5:8, 5:13, 5:18, 5:20, 5:21, 5:24, 6:2, 6:4, 6:6, 6:8, 6:11, 7:20, 7:22, 8:13, 8:15, 8:23, 11:14, 11:16, 12:19, 12:20, 13:2, 13:3, 13:10, 13:14, 13:19, 14:13, 14:16, 15:3, 15:12, 15:15, 15:19, 15:22, 16:2, 16:6, 16:14, 16:17, 16:23, 17:2, 17:10, 17:13, 17:20, 18:15, 18:17, 18:21, 18:24, 19:12, 19:15, 19:18, 20:12, 20:16, 20:23, 21:3, 21:6, 21:9, 21:18, 21:21, 21:24, 22:10, 22:22, 23:9, 23:13, 23:16, 24:2, 24:7, 24:11, 24:13, 24:16, 24:24, 25:11, 25:14, 25:22, 26:3, 26:7, 26:13, 26:17, 26:24, 27:4, 27:7, 28:4, 28:9, 28:10
**MS** [5] - 3:6, 3:12, 3:15, 3:19, 3:21

## N

**name** [2] - 5:19, 5:23
**national** [2] - 12:11, 27:18
**natural** [3] - 17:3, 19:6, 19:10
**necessary** [1] - 9:11
**need** [10] - 3:22, 4:3, 9:12, 10:18, 12:12, 21:21, 27:13, 27:16, 27:23, 27:24
**New** [1] - 2:3
**next** [8] - 7:4, 8:6, 11:9, 14:24, 15:1, 15:5, 27:10, 27:11
**NEXT** [1] - 1:25
**nice** [1] - 4:6
**non** [2] - 8:11, 8:16
**non-Markman** [2] -

8:11, 8:16
**nonsense** [1] - 27:22
**normal** [1] - 9:6
**normally** [2] - 15:6, 19:22
**NOTES** [1] - 2:14
**NOVAK** [1] - 1:8
**Novak** [1] - 5:17
**nowhere** [1] - 5:1
**NY** [2] - 1:17, 2:3

## O

**objection** [1] - 16:5
**obviously** [1] - 22:13
**occurs** [1] - 13:16
**October** [5] - 9:9, 9:19, 10:20, 10:24
**OF** [5] - 1:1, 1:8, 2:14, 28:16, 28:25
**OFFICIAL** [2] - 2:9, 28:16
**offs** [1] - 13:9
**ON** [1] - 1:25
**one** [16] - 6:22, 8:1, 9:22, 11:21, 12:2, 15:5, 16:17, 18:24, 19:3, 19:7, 21:2, 21:6, 21:22, 21:25, 24:14, 26:17
**open** [2] - 11:17, 12:22
**opening** [1] - 11:9
**openings** [1] - 10:19
**opinion** [1] - 8:6
**opposite** [1] - 4:2
**orally** [3] - 7:10, 14:11, 14:13
**order** [8] - 11:4, 12:15, 18:2, 26:22, 26:25, 27:5, 27:9, 27:14
**ordinary** [5] - 13:6, 13:7, 13:15, 13:23, 25:19
**original** [2] - 4:22, 11:22
**originally** [2] - 6:18, 9:17
**own** [5] - 4:7, 4:16, 7:7, 16:25, 17:18

## P

**packages** [4] - 21:12, 21:15, 22:25, 23:3
**page** [1] - 12:9
**PAGE** [1] - 1:25
**pages** [7] - 2:13, 7:13, 8:21, 12:21, 27:12, 27:13, 27:14
**paging** [1] - 8:2

**papers** [1] - 9:13
**Paragraph** [1] - 24:22
**parameters** [1] - 11:3
**parcels** [2] - 22:25, 23:5
**parser** [4] - 24:20, 24:21, 25:1, 25:4
**parsing** [2] - 24:25, 25:3
**particular** [3] - 14:9, 19:6, 19:10
**particularly** [5] - 6:19, 6:21, 7:15, 11:23, 27:25
**party** [1] - 3:4
**patent** [12] - 13:20, 13:24, 14:18, 15:24, 16:11, 17:22, 18:8, 19:1, 20:5, 20:19, 20:25, 21:12
**patent's** [2] - 22:3, 22:14
**patents** [4] - 15:19, 21:2, 22:7, 22:18
**Peak** [1] - 3:8
**PEAK** [2] - 1:12, 1:16
**peg** [1] - 25:3
**Pepper** [1] - 5:17
**PEPPER** [1] - 2:5
**perfect** [1] - 26:24
**performs** [1] - 25:24
**person** [1] - 13:7
**pivot** [2] - 4:21, 7:1
**places** [1] - 13:24
**plain** [2] - 13:15, 25:19
**plaintiff** [3] - 1:4, 3:7, 11:13
**PLAINTIFF** [1] - 1:11
**plaintiffs** [1] - 3:18
**plan** [2] - 4:22, 5:7
**planned** [1] - 4:2
**play** [1] - 6:18
**playing** [1] - 25:12
**plays** [1] - 7:11
**PMB** [1] - 1:13
**Point** [1] - 2:6
**point** [2] - 3:18, 21:7
**position** [1] - 24:3
**positions** [1] - 10:5
**prefer** [1] - 18:19
**prepared** [1] - 4:13
**preserving** [3] - 24:9, 25:8, 25:21
**presume** [1] - 25:12
**pretrial** [2] - 9:18, 11:11
**pretty** [2] - 10:17, 17:21
**priced** [1] - 14:5

**problem** [2] - 24:25
**procedural** [1] - 12:24
**procedure** [1] - 23:17
**procedures** [1] - 23:22
**proceedings** [1] - 28:19
**process** [4] - 20:6, 20:9, 22:4, 22:16
**processing** [1] - 17:4
**productive** [1] - 10:1
**proper** [1] - 24:5
**proposal** [7] - 14:2, 14:8, 14:21, 15:7, 19:3, 23:18, 23:22
**proposals** [4] - 26:18, 26:23, 27:5, 27:12
**propose** [2] - 23:12, 23:24
**proposed** [3] - 16:2, 26:5, 27:9
**proposing** [2] - 11:24, 24:11
**provided** [1] - 17:8
**provides** [2] - 21:12, 21:15
**providing** [1] - 5:15
**purpose** [1] - 17:7
**pushed** [1] - 10:2
**put** [4] - 5:2, 8:17, 12:10, 18:2
**putting** [2] - 7:16, 25:3

## Q

**queries** [4] - 20:7, 20:10, 22:5, 22:16
**question..** [1] - 6:7
**questions** [9] - 4:11, 4:13, 5:15, 6:9, 7:6, 20:7, 20:10, 22:5, 22:16
**quickly** [1] - 27:3
**quite** [1] - 19:15

## R

**rails** [1] - 9:15
**raise** [1] - 12:25
**read** [4] - 17:15, 19:7, 19:21, 22:12
**Real** [1] - 1:19
**really** [8] - 4:6, 4:18, 5:13, 11:6, 23:2, 26:1, 28:1, 28:7
**realm** [1] - 24:3
**reason** [2] - 5:10, 27:15
**reasonable** [1] - 7:18
**reasons** [1] - 12:2
**REBECCA** [1] - 2:9

**Rebecca** [1] - 28:18
**receive** [4] - 20:6, 20:9, 22:4, 22:15
**record** [2] - 28:11, 28:19
**Redwood** [1] - 1:20
**reference** [2] - 15:25, 16:12
**references** [2] - 15:8, 15:17
**referencing** [2] - 19:4, 19:8
**related** [3] - 8:8, 8:11, 13:20
**relevance** [1] - 17:24
**remain** [1] - 7:25
**remember** [7] - 5:4, 6:19, 8:24, 9:23, 10:15, 23:19, 24:9
**RENEE** [1] - 1:18
**repeating** [2] - 19:22, 19:25
**replies** [1] - 9:7
**REPORTER** [3] - 2:9, 28:16, 28:25
**reporter** [1] - 27:1
**requests** [3] - 18:8, 18:11, 23:4
**requires** [1] - 13:25
**reserve** [6] - 14:12, 18:19, 19:14, 20:15, 20:17, 22:20
**respectfully** [1] - 14:16
**respond** [9] - 13:23, 20:6, 20:10, 22:4, 22:8, 22:16, 23:3, 26:20, 26:22
**responses** [3] - 9:7, 27:10, 27:12
**rewrite** [1] - 24:4
**RICHARD** [1] - 1:11
**Richard** [1] - 3:15
**Richmond** [3] - 2:7, 5:11, 10:21
**ripe** [1] - 9:4
**Road** [1] - 1:16
**road** [4] - 9:8, 10:11, 10:22, 23:20
**ROBERT** [2] - 2:1, 2:4
**rocket** [1] - 6:13
**role** [2] - 5:14, 6:18
**roll** [3] - 5:6, 9:1, 21:11
**round** [2] - 8:4, 25:3
**RPR** [1] - 2:9
**rule** [1] - 25:13
**ruled** [1] - 11:1
**rules** [5] - 18:1, 18:8, 18:10, 19:5, 19:9

**ruling** [7] - 6:21, 8:7, 8:16, 9:24, 10:4, 25:15, 27:17
**running** [1] - 16:4

## S

**SANDERS** [1] - 2:6
**Scarsdale** [1] - 1:17
**schedule** [5] - 7:4, 8:10, 8:19, 8:21, 11:22
**scheduled** [1] - 9:23
**scheduling** [5] - 11:4, 12:14, 12:17, 27:9, 27:14
**score** [1] - 17:24
**screw** [2] - 5:6, 12:3
**scriveners** [1] - 14:6
**seat** [1] - 15:4
**second** [1] - 16:20
**secret** [1] - 5:11
**Section** [1] - 24:22
**security** [2] - 12:11, 27:18
**see** [9] - 5:12, 9:14, 10:3, 10:4, 10:12, 11:23, 18:3, 21:10, 23:21
**seeing** [1] - 13:8
**seem** [1] - 16:22
**selection** [2] - 9:19, 11:9
**sense** [2] - 6:24, 26:1
**sensitive** [1] - 23:17
**separate** [2] - 18:12, 26:22
**September** [2] - 9:10, 9:16
**set** [3] - 18:8, 18:10, 18:12
**sets** [4] - 19:4, 19:5, 19:8, 19:9
**setting** [1] - 13:16
**settle** [2] - 10:10, 28:1
**settled** [2] - 10:13, 11:1
**settlement** [2] - 9:20, 10:6
**shoot** [1] - 6:8
**side** [1] - 7:15
**sides** [1] - 19:23
**sIGNATURE** [1] - 28:25
**Silicon** [1] - 1:23
**similar** [1] - 23:23
**sit** [1] - 14:4
**situation** [1] - 13:16
**skill** [1] - 13:7
**slowly** [1] - 16:9

smart [3] - 4:18, 15:14, 18:23
sneaking [1] - 9:5
so.. [1] - 11:18
soft [1] - 8:24
software [6] - 20:19, 20:20, 21:12, 21:14, 25:17, 25:24
solve [1] - 24:5
someone [1] - 6:9
sometimes [1] - 9:13
sorry [6] - 3:19, 5:20, 5:24, 10:21, 20:23, 22:10
sound [5] - 5:7, 7:18, 8:22, 23:12, 26:23
sounds [1] - 8:23
speaking [1] - 5:14
specific [8] - 17:7, 20:6, 20:9, 20:20, 20:21, 21:14, 21:16, 23:3
specifically [1] - 13:6
specification [1] - 14:18
spent [1] - 7:15
spoken [1] - 17:4
Square [1] - 2:10
square [1] - 25:3
St [1] - 1:23
stack [7] - 15:7, 15:24, 15:25, 16:3, 16:7, 16:12, 16:18
stand [1] - 3:4
start [4] - 12:25, 13:5, 15:23, 22:8
starting [2] - 16:15, 16:21
STATES [2] - 1:1, 1:9
status [3] - 10:20, 10:24, 11:20
STENOGRAPHIC [1] - 2:14
STEPHENS [19] - 1:11, 3:10, 4:5, 4:9, 4:12, 5:8, 7:22, 11:14, 12:19, 13:2, 13:10, 15:15, 17:10, 24:13, 26:17, 26:24, 27:4, 27:7, 28:9
Stephens [8] - 3:9, 4:11, 11:13, 13:6, 14:14, 15:13, 17:9, 26:15
STEPHENSON [1] - 3:24
steps [1] - 23:20
still [3] - 15:11, 16:13, 18:23
Stonestreet [2] -

28:18, 28:24
STONESTREET [1] - 2:9
store [2] - 15:25, 16:12
stores [2] - 15:8, 15:17
string [1] - 25:17
strong [1] - 25:22
structure [7] - 15:8, 15:17, 17:8, 19:4, 19:5, 19:8, 19:9
structured [2] - 18:9, 18:11
stuff [8] - 4:7, 8:2, 11:5, 11:20, 12:24, 19:25, 27:17, 27:21
subject [1] - 14:8
substance [1] - 13:1
substantive [1] - 27:23
suggestions [2] - 8:21, 12:22
Suite [2] - 2:2, 2:7
summary [15] - 6:17, 7:25, 8:3, 8:5, 8:8, 8:11, 9:4, 9:12, 9:13, 9:15, 10:4, 11:2, 23:19, 24:9, 25:10
supplemental [3] - 4:25, 7:12, 22:20
surely [1] - 16:9
suspicion [1] - 9:5
system [3] - 14:1, 21:13, 21:16

**T**

tails [1] - 4:19
talks [1] - 17:22
TANG [1] - 1:22
Tara [1] - 3:6
TARA [1] - 1:18
team [3] - 26:10, 26:12, 26:16
technical [1] - 11:5
TEMPLE [1] - 1:11
term [12] - 15:20, 16:24, 17:1, 17:2, 17:3, 17:6, 17:14, 17:17, 17:19, 20:24, 22:6, 22:17
terms [1] - 12:14
text [1] - 17:22
THE [86] - 1:1, 1:8, 1:11, 1:21, 2:1, 3:11, 3:14, 3:16, 3:20, 3:22, 4:1, 4:6, 4:10, 4:16, 5:9, 5:19, 5:22, 6:1, 6:3, 6:5, 6:10,

6:12, 7:23, 8:14, 8:17, 8:24, 11:15, 11:19, 12:21, 13:4, 13:12, 13:17, 14:2, 14:14, 14:21, 15:4, 15:13, 15:16, 15:21, 15:23, 16:4, 16:9, 16:15, 16:19, 16:24, 17:9, 17:12, 17:15, 18:6, 18:16, 18:20, 18:22, 18:25, 19:13, 19:17, 19:19, 20:13, 20:18, 21:1, 21:5, 21:7, 21:10, 21:20, 21:23, 22:1, 22:12, 23:6, 23:10, 23:14, 23:17, 24:6, 24:9, 24:15, 24:18, 25:6, 25:12, 25:15, 26:2, 26:4, 26:8, 26:15, 26:21, 26:25, 27:5, 27:8, 28:6
themselves [1] - 3:4
they've [1] - 6:6
thinking [7] - 4:24, 7:23, 14:24, 15:2, 19:20, 20:1, 23:8
thoughts [5] - 7:10, 7:13, 18:19, 23:11, 25:21
three [5] - 8:20, 12:21, 23:11, 27:13
Thursday [1] - 12:18
tied [1] - 27:18
timing [1] - 8:25
today [6] - 3:8, 3:20, 3:25, 7:17, 12:16, 27:2
today's [1] - 26:20
together [3] - 7:16, 10:23, 16:3
totally [3] - 19:17, 19:19, 21:23
TRANSCRIPT [1] - 1:8
transcript [3] - 26:19, 27:1, 28:19
TRANSCRIPTION [1] - 2:14
treatise [1] - 17:4
trial [4] - 9:9, 11:17, 11:22, 12:11
trouble [1] - 26:18
TROUTMAN [1] - 2:5
Troutman [1] - 5:17
true [1] - 6:13
try [2] - 10:12, 11:8
trying [4] - 5:4, 6:15, 10:14, 22:13
Tuesday [1] - 11:11
turn [1] - 17:10

tweak [3] - 11:5, 11:20, 27:14
two [8] - 10:16, 12:2, 12:5, 12:13, 12:21, 21:2, 26:9
TX [1] - 1:14

**U**

U.S [1] - 2:10
understood [5] - 4:9, 5:8, 15:3, 25:14, 28:4
unfortunately [1] - 20:16
UNITED [2] - 1:1, 1:9
up [7] - 5:6, 6:7, 9:22, 12:1, 13:12, 18:6, 27:18
user [6] - 13:16, 20:6, 20:10, 22:5, 22:16, 23:4
utterance [2] - 14:9, 14:10

**V**

VA [1] - 2:7
Vaala [2] - 9:21, 28:2
Vaala's [1] - 9:25
Valley [1] - 1:23
valuable [1] - 13:21
value [1] - 13:21
variable [1] - 13:21
versus [1] - 3:3
view [2] - 4:7, 10:6
View [1] - 1:24
VIRGINIA [1] - 1:1
Virginia [1] - 2:11
voice [1] - 5:10

**W**

wants [1] - 12:25
weapon [1] - 5:11
week [7] - 7:12, 8:20, 11:2, 12:17, 18:20, 26:19, 26:22
weeks [1] - 8:6
WEST [2] - 1:22, 2:1
West [1] - 5:17
wherein [2] - 19:5, 19:9
whole [2] - 18:1, 25:2
windows [1] - 27:19
wing [1] - 11:6
witness [1] - 27:22
word [3] - 14:18, 14:19, 18:3
words [3] - 17:8, 18:2, 25:17

works [2] - 16:3, 18:24
wrapped [1] - 12:1
write [1] - 14:5
writing [2] - 14:12, 26:18

**Y**

year [1] - 11:9
York [1] - 2:3
you-all [6] - 4:2, 4:17, 7:18, 8:19, 12:16, 28:6

**Z**

Zurawski [2] - 3:6, 3:17
ZURAWSKI [6] - 1:18, 3:6, 3:12, 3:15, 3:19, 3:21