IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DIALECT, LLC,
    Plaintiff,

v.

AMAZON.COM INC., *et al.*,
    Defendants.

█████[1]

Civil No. 1:23cv581 (DJN)

**MEMORANDUM ORDER**
**(Denying Motion to Exclude Testimony of Michael Kennewick)**

This matter comes before the Court on Defendants Amazon.com, Inc. and Amazon Web Services, Inc.'s (together, "Amazon") Motion to Strike and Exclude Testimony By Michael Kennewick, Sr. (ECF No. 215 ("Motion")), which seeks to invoke this Court's "inherent authority and Federal Rule of Evidence 403 to strike Mr. Kennewick's deposition testimony and prohibit Dialect from calling him as a witness at trial." (ECF No. 220 ("Defs.' Br.") at 2.) For the reasons stated below, the Court hereby DENIES Amazon's Motion (ECF No. 215).

## I.    BACKGROUND

Mr. Kennewick, formerly the CEO of VoiceBox Technologies ("Voicebox"), constitutes a named inventor on all but one of the six Asserted Patents in this case.[2] Over nearly 18 years, VoiceBox accrued a sizable portfolio of patents, but that portfolio was ultimately divided between two different entities when VoiceBox went out of business. One half of the portfolio

---

[1] The Court issues this Memorandum Opinion under seal in the first instance to prevent the disclosure of confidential information.

[2] The six Asserted Patents include U.S. Pat. Nos. 7,693,720 (the "'720 Patent"); 8,015,006 (the "'006 Patent"); 8,140,327 (the "'327 Patent"); 8,195,468 (the "'468 Patent"); 9,263,039 (the "'039 Patent"); and 9,495,957 (the "'957 Patent").

ended up with Dialect, while the other ended up with an unrelated company called VB Assets, LLC. VB Assets sued Amazon for patent infringement in a separate suit (the "VB Assets Litigation"), which was tried to a jury in November 2023. *See* Transcripts of Jury Trial, *VB Assets, LLC v. Amazon.com, Inc.*, No. 1:19cv1410 (D. Del.) (ECF Nos. 303–07).

Mr. Kennewick testified for the plaintiffs in the VB Assets Litigation, and the parties here anticipate that Mr. Kennewick will likewise testify as a fact witness for Dialect at trial.[3] (*See* Defs.' Br. at 9 (remarking that Mr. Kennewick "was always a likely fact witness in this case").) As a named inventor, Mr. Kennewick holds knowledge of the Asserted Patents, their development, their licensing history and how they can be used by licensees. And as the former CEO of VoiceBox, Mr. Kennewick knows VoiceBox's long history with Amazon. For instance, during the *VB Assets* trial, Mr. Kennewick explained that VoiceBox provided Amazon with extensive information about VoiceBox's patented technology years before Amazon sold any Alexa-enabled products. (ECF No. 251-2 at 156:4–162:14, 171:6–184:23.) Mr. Kennewick also testified about Amazon's attempts to hire away most of VoiceBox's 106-member engineering team and win over VoiceBox's key customers. (*Id.* at 172:6–173:9, 185:1–2.) The jury in the VB Assets Litigation found Amazon liable for infringement and awarded VB Assets $46.7 million in damages — a success that Amazon appears to attribute, at least in part, to Mr. Kennewick's "favorable testimony." (Defs.' Br. at 9–10.)

On November 9, 2022, Dialect and Mr. Kennewick, through Chatterbox LLC,[4] executed

---

[3] Dialect has made clear that it "has not and will not present Mr. Kennewick as an expert." (ECF No. 250 ("Pl.'s Br.") at 9.)

[4] Mr. Kennewick constitutes the sole member of Chatterbox and receives all money paid to that entity. (ECF No. 220-5 ("Kennewick Dep.") at 35:11–14.) Mr. Kennewick formed Chatterbox on the same day that Dialect retained him as an expert. (*Id.* at 48:3–11.)

an agreement (the "First Agreement"), which agreed to pay Mr. Kennewick ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (ECF No. 220-2.) The First Agreement gave Dialect the option to designate Mr. Kennewick as a testifying expert in any potential litigation, (*id.* ¶ 1), but Dialect never exercised that option. (Pl.'s Br. at 6.)

Dialect submits that it retained Mr. Kennewick based on his significant experience and relationships in the voice recognition industry and his expertise about the patented technology that he invented. (Pl.'s Br. at 5.) Dialect also recognized Mr. Kennewick's ability to use his relationships with former customers, like Samsung, to broker licensing agreements to avoid the costs of litigation. (*Id.*) Dialect contends that it sought Mr. Kennewick to help Dialect to monetize its patent holdings through licensing efforts, and to help Dialect to enforce its ownership rights against infringers through litigation, if necessary. (*Id.* at 2.)

On January 2, 2024, Dialect and Chatterbox executed a new agreement (the "Second Agreement"), which amended and superseded the First Agreement. (ECF No. 220-3.) As a result, Mr. Kennewick received a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Mr. Kennewick also stands entitled to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

The parties vehemently contest the legitimacy of Mr. Kennewick's new compensation agreement. Amazon submits that Fourth Circuit law and applicable ethics rules prohibit contingency fee arrangements like the one between Dialect and Mr. Kennewick. (Defs.' Br. at 7.) In Amazon's view, Dialect induced Mr. Kennewick to provide favorable testimony by agreeing to compensate him based on the outcome of the litigation. (*Id.* at 7–9.) Amazon also argues that the Second Agreement, which gave Mr. Kennewick a consulting agreement and gave

Chatterbox a ▮▮▮▮ in Dialect, was executed to lend credibility to Dialect's unethical dealings. By contrast, Dialect contends that the adoption of the Second Agreement "was driven by Mr. Kennewick's demonstrated valuable contributions, Dialect's plans to expand licensing efforts and enforce the patents with other parties, and the fact that the additional efforts would take significant time for Mr. Kennewick, beyond what he was already doing." (Pl.'s Br. at 7 (citations and quotations omitted).) Amazon submits that, to remedy Dialect's alleged misconduct, the Court should preclude Mr. Kennewick from testifying. This issue has been fully briefed, (ECF Nos. 220, 250, 271), rendering it ripe for resolution.

## II.  DISCUSSION

The Court must address whether Mr. Kennewick may testify as a fact witness[5] notwithstanding his stake in the outcome of the litigation. Virginia Rule of Professional Conduct 3.4(c), which governs in this case,[6] bars "an inducement to a witness that is prohibited by law." The comment to that rule explains that "it is improper to pay an occurrence witness any fee for testifying." Va. R. Prof'l Cond. 3.4(c) cmt. [3]. On the facts presented, the Court concludes that

---

[5]  As Dialect has stated that it "has not and will not present Mr. Kennewick as an expert," (Pl.'s Br. at 9), the Court focuses its analysis on whether Dialect may offer fact testimony from a witness with a contingent financial interest. To the extent that Amazon argues that Mr. Kennewick may not offer fact testimony, because his testimony would be tainted by the fact that Dialect initially retained him as a potential expert, the Court rejects Amazon's position. Courts regularly permit witnesses with contingency interests to offer fact testimony while excluding their expert testimony. *See, e.g., Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*, 2019 WL 1756292, at *3 (W.D. Va. Apr. 19, 2019) (precluding a witness from testifying as an expert due to "his direct financial interest in the outcome of [the] case" but finding his testimony as a fact witness "obviously appropriate despite that bias").

[6]  Local Civil Rule 83.1(M) and Federal Rule of Disciplinary Enforcement IV(B) together subject all attorneys admitted to practice in this District to the Virginia Rules of Professional Conduct.

4

Mr. Kennewick was not paid by Dialect "for testifying," and therefore, Mr. Kennewick's compensation agreement does not qualify as improper.

Rule 3.4(c) and its analogues in other states bar payments to fact witnesses contingent on the content of their testimony. By way of example, in *Covey v. Colonial Pipeline Co.*, 2021 WL 724600 (N.D. Ala. Feb. 24, 2021), the plaintiff's counsel hired the defendant's former employee as a consultant and paid the former employee a $5,000 retainer "to help [the plaintiff] understand the facts and circumstances related to the issues presented" in the case, "identify important witnesses and documents, and collect and assemble evidence." *Id.* at *4. The defendant argued that the payment qualified as improper because of the consultant's status as a fact witness. *Id.* However, because the defendant produced no persuasive evidence that the plaintiff "paid [the consultant] for his testimony (instead of for his consulting services)," the court found no ethical violation and declined to grant any relief. *Id.*

Likewise, here, the Court finds no ethical violation, because Amazon has produced no persuasive evidence that Dialect paid Mr. Kennewick for his testimony, as opposed to his knowledge, experience and the relationships that he developed during his nearly 18 years at VoiceBox. Dialect's business depends on monetizing VoiceBox's patents, and Mr. Kennewick has evidently proven invaluable in enforcing the technology that he invented. (Pl.'s Br. at 18; *see* Defs.' Br. at 5 (recognizing that VB Assets secured a "substantial award" with Mr. Kennewick's testimony).) Moreover, Dialect retained Mr. Kennewick, who collected on a contingency fee basis even under the First Agreement, nearly six months before it ever filed a complaint against Amazon. (Defs.' Br. at 2.) And Dialect proffers a reasonable explanation for the amended compensation agreement. (ECF No. 250-2 at 7 (arguing that Dialect's motivation was to "fairly compensate Mr. Kennewick for his work advising Dialect"); ECF No. 220-3 at 1

("contemplat[ing] an expanded collaboration in which Kennewick assumes a leadership role within Dialect").) The Court finds that nothing but conjecture supports Amazon's inflammatory allegation that Dialect attempted to induce Mr. Kennewick into testifying or that Dialect obscured such unethical behavior "with other duties like 'consulting' services for 'patent portfolio monetization' and later making Mr. Kennewick's LLC one of Dialect's members." (Defs.' Br. at 16.) Amazon has not produced persuasive evidence to support such far-reaching accusations. Consequently, Mr. Kennewick may testify as a fact witness notwithstanding his financial interests.

Amazon's reliance on *TQP Development, LLC v. Merrill Lynch & Co.*, 2012 WL 13050554 (E.D. Tex. July 18, 2012), does not alter the Court's conclusion. There, the plaintiff hired the sole named inventor of the asserted patent as a technical consultant six days before his scheduled deposition. *Id.* at *1. The plaintiff agreed to pay the named inventor "a fee equal to 2.5% of the gross settlement and licensing revenue generated with respect to the [asserted] patent and any other patents on which he was one of the named inventors." *Id.* (cleaned up). The defendant argued that this contingent fee arrangement qualified as both improper and unethical. *Id.* at *3. The court rejected the plaintiff's argument that the 2.5% contingent fee provision fell within a safe harbor created by Federal Circuit cases and found that, "in the absence of any mitigating consideration," the payment qualified as improper. *Id.* at *5. Nonetheless, however, the court declined to grant the defendant any relief, as the defendant had "failed to show" that any sanction less stringent than "dismissal" would suffice to remedy the plaintiff's misconduct. *Id.* at *6–7.

Here, Dialect presents "mitigating consideration[s]" that warrants a different outcome than that reached by the court in *TQP*.[7] In that case, the named inventor was hired as a technical consultant a mere six days before his scheduled deposition, but here, Dialect retained Mr. Kennewick for his knowledge and experience in the voice recognition industry nearly six months before this lawsuit was initiated. And as discussed above, Amazon presents no evidence to rebut Dialect's narrative that it sought Mr. Kennewick to pursue its corporate initiatives and his payment was not contingent on the content of his testimony. *TQP* thus stands disanalogous to the instant case and, even if it were binding on this Court, would not dictate the outcome here.

Furthermore, Amazon cites no Fourth Circuit case law requiring exclusion, and the Court would not award such a sanction in any event.[8] Courts must exercise their inherent authority "with the greatest restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). Here, Mr. Kennewick's testimony appears to be vital to Dialect's trial presentation. (*See, e.g.*, Pl.'s Br. at 8 (indicating that Amazon proposed, and Dialect agreed, "that neither Dialect nor Amazon rely on any of the named inventors — except Mr. Kennewick, Sr. — as a witness at trial"); *id.* at 28 (referring to Mr. Kennewick as a "critical witness").) As a named inventor and the former CEO of VoiceBox, Mr. Kennewick can testify to probative facts on a myriad of material issues, including willfulness, marking, and damages. And Mr. Kennewick's previous testimony in the VB Assets Litigation, corroborated by contemporaneous documents, stands available as a source of impeachment

---

[7] The Court takes no position on whether the contingent fee arrangement at issue in this case falls within a safe harbor articulated by the Federal Circuit in *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998).

[8] In patent cases, Federal Circuit precedent governs substantive questions of patent law, but "regional circuit law" — here, the Fourth Circuit's — applies to "evidentiary determinations." *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1370 (Fed. Cir. 2021).

evidence and thus helps ensure that his testimony will not be tainted by his contingency fee agreement. In addition, considering Dialect's full transparency regarding Mr. Kennewick's financial interests and the lack of evidence suggesting bad faith,[9] exclusion of a critical witness would constitute an extreme remedy. For these reasons, and consistent with the Fourth Circuit's guidance to exercise this Court's inherent powers "with the greatest restraint and caution," this Court would not exclude Mr. Kennewick's testimony even if Amazon had proved its case. *Shaffer Equip. Co.*, 11 F.3d at 461.

Finally, the Court rejects the argument that Mr. Kennewick's testimony must be excluded pursuant to Rule 403, because his "obvious bias means that any testimony he offers risks unfair prejudice and may mislead the jury." (Defs.' Br. at 13.) Rule 403 provides a limited bar to otherwise admissible evidence: Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Fed. R. Evid. 403. "Rule 403 exclusion should be invoked rarely, because the general policy of the Federal Rules is that all relevant material should be laid before the jury." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (cleaned up). Here, Mr. Kennewick will likely testify on a host of material issues, including willfulness, marking and damages, and any financial bias can be explored through cross-examination — a remedy that, unlike Amazon's, is contemplated by the Rules of Evidence and endorsed by the circuit courts. *See, e.g., Crowe v. Bolduc*, 334 F.3d 124, 131 (1st Cir. 2003) (allowing fact witnesses paid on contingency to be cross-examined for bias). Although the Court may have reached a different outcome if Dialect had offered Mr. Kennewick as an expert witness, the Court need not address how it would

---

[9] Amazon argues that the Court may impose disciplinary sanctions without a finding of bad faith. (Reply at 14.) However, such an argument does not preclude the Court from considering Dialect's lack of bad faith in determining whether to exercise the Court's inherent authority.

resolve that hypothetical dispute. The Court finds that the dangers of unfair prejudice and misleading the jury do not "substantially outweigh[]" the probative value of Mr. Kennewick's testimony, Fed. R. Evid. 403, and thus, the Court will not exclude his testimony on Rule 403 grounds.

### III.   CONCLUSION

For the reasons set forth above, the Court hereby DENIES Amazon's Motion (ECF No. 215). The Court hereby DIRECTS the parties to jointly propose a *narrowly tailored* set of redactions to the Court's Memorandum Order so that a version may promptly be made available to the public. The parties must jointly submit their proposed redactions no later than July 31, 2024.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Alexandria, Virginia
Date: July 23, 2024